# Monongahela Bridge Co. *versus* Pittsburgh & Birmingham Railway Co.

1. A bridge company, in pursuance of its charter, Act of March 19th, 1810, and a supplementary Act of February 17th, 1816, and upon the faith of their provisions, erected a toll bridge over the Monongahela River at Pittsburgh. By the Act of April 13th, 1839, P. L. 749, a street railway company was incorporated and authorized to lay its tracks across said bridge. The railway company and the bridge company, for about twelve years, agreed upon the rate of toll for a street car.

2. The Act of 1859 provides, that if the two companies "cannot agree as to the terms for the use of the bridge, within thirty days from the organization of the railway company, the said company may apply by petition to the Court of Quarter Sessions," which court is authorized to fix the rate of compensation to be allowed for the use of the bridge.

3. The Act of May 18th, 1871, P. L.    , a supplement to the Acts of 1810

and 1816, provides for the erection of a new bridge, and by it the rates for tolls are fixed, "for every carriage, wagon, buggy, or other wheeled vehicles of whatever description."

4. The bridge company accepted this Act and built the bridge. They then increased the rate of toll over it for the street cars. The railway company, unwilling to pay the increased toll, petitioned the Court of Quarter Sessions to fix the rate of toll for street cars, which the court did. The bridge company then petitioned the court for an appeal to the Court of Common Pleas, and demanded a trial by jury; this the court refused. On a *certiorari* to the Supreme Court, *Held—(a)* That the Quarter Sessions had jurisdiction to fix the tolls for a street car; the acceptance of the Act of 1871 by the bridge company was subject to the Act of 1859. *(b)* That the general description of vehicles in the Act of 1871, viz., "other wheeled vehicles of whatsoever description," must be restricted to the same kind or general class of vehicles with those particularized, viz., "carriages, wagons and buggies," and therefore does not include street cars. *(c)* That the right of the railway company to petition the Court of Quarter Sessions to fix the rate of tolls is not precluded under the facts in this case. *(d)* That the bridge company is not entitled to an appeal under Article XVI., Section 8 of the Constitution.

October 26th, 1886. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

CERTIORARI to the Court of Quarter Sessions of the Peace of *Allegheny county:* Of October Term 1886, No. 27.

The record showed the following:—

January 26th, 1884, petition of Pittsburgh and Birmingham Passenger Railway Company presented, stating a failure to agree with the Monongahela Bridge Company as to the rate of compensation to be paid for the use of the bridge; that the rate demanded by the bridge company is excessive, and asking the court to fix the rate and the terms, and the manner in which the tracks shall be kept up.

February 9th, 1884, answer of the bridge company filed, denying the jurisdiction, and that the rate is excessive.

March 1st, 1884, arguments of counsel on petition and answer, and N. S. Williams appointed commissioner.

September 1st, 1885, the court filed the following opinion and decree: After an examination of the facts in evidence in above case, and the questions of law submitted by counsel for defendant going to the foundation of this proceeding, I have come to the conclusion that the objections urged to the jurisdiction of the court should be overruled. And now, proceeding under such conclusion to fix and determine the amount of tolls which should be paid by plaintiff for the use and passage over defendant's bridge, I am of opinion that the sum of two cents per trip of each car, that is for each time a car passes over said bridge, is a just and fair compensation therefor;

and therefore I do now, in pursuance of the powers and duties devolving upon the said Court of Quarter Sessions, fix and determine that said plaintiff shall hereafter, and from the date of the filing of the petition, account and pay said defendant the sum of two cents as a proper compensation and toll for each single trip or passage of a car of plaintiff over and across said bridge of defendant, payable monthly, as the same shall accrue; and further, that the expense of maintaining and keeping in order the tracks on and over the said bridge shall be borne by said bridge company, in the same manner as was done at the time of the filing of the petition in this case.

September 28th, 1885, petition of the Monongahela Bridge Company for an appeal to the Court of Common Pleas of Allegheny county and demand for a jury trial filed.

November 30th, 1885, petition dismissed.

The Monongahela Bridge Company thereupon took this writ and assigned for error the decree of the court fixing the tolls to be paid by the said railway company, and the action of the court in dismissing the petition for an appeal and jury trial.

*A. H. Clarke* (*W. B. Rodgers* with him), for plaintiff in error. —I. The court below had no jurisdiction to make the order fixing the rate of tolls to be paid by the railway company.

1. The charter of the bridge company gave it the right to charge certain tolls, and the terms used includes street cars; the charter constitutes a contract, and these tolls cannot be reduced or interfered with by the legislature. The fact that street cars were not known at the time makes no difference. A change of form from anything known at the time the Act of Assembly was passed, is not a change of the nature of the vehicle, and the term "omnibuses or vehicles in the nature thereof," includes street cars: Frankford, &c. R. W. Co. *v.* Philadelphia, 58 Pa. St., 124.

A different modification of the same thing in substance cannot alter its essential character: Merrick *v.* Phelps, 5 Conn., 467.

In Taylor *v.* Goodwin, L. R. 4 Q. B. Div., 228, a person riding a bicycle on a highway was convicted of furiously driving a carriage, under 5 & 6 Wm. 4, ch. 50, sec. 78, the court saying that though bicycles were unknown at the date of the Act yet the intention was to use words large enough to comprehend any kind of vehicle which might be propelled at such speed as to be dangerous.

In Pakyns *v.* Priest, L. R. 7 Q. B. Div. 313, it was held that a tricycle propelled by the feet of the rider, or by steam as an

[Monongahela Bridge Co. *v.* P. & B. R. R. Co.]

auxiliary, or by steam alone, was a locomotive within the definition in sec. 38 of the Highways and Locomotive (Amendment) Act, 1878, and was subject to the rules and regulations for use of locomotives on highways prescribed by that and other Acts.

A street car might be denominated as a carriage either of trade, accommodation or pleasure: Talcott Turnpike Co. *v.* Marshall, 11 Conn., 185; Moss *v.* Moore, 18 Johns., 128; Phila. & Lancaster Turnpike Co. *v.* Gartland, 6 Phila., 128.

2. Even if the legislature has this power and granted it to the railway company, the exercise of the power is limited to the period of thirty days from the organization of the company, and cannot be exercised after that time.

Before the bridge was occupied, and within thirty days from the organization of the company, it and the bridge company agreed, and under that agreement and one made subsequently, the bridge was used for twenty-four years.

We contend, then, that the railway company made its election, to depend upon its power to agree, and cannot now invoke this section of the Act: Musser *v.* Fairmount Railway Co., 5 Clark, 466.

A power limited in time cannot be exercised after that time: Plymouth R. R. Co. *v.* Colwell, 3 Wr., 341.

But if the legislature had intended to make this power continuous, they should have said so. Not having said so, it will not be construed as continuous: Moorhead *v.* Little Miami R. R. Co., 17 Ohio, 352; Penna. R. R. Co.'s Appeal, 12 N. 159.

II. If we assume that the court had jurisdiction to fix the rates of toll, then the bridge company was entitled to an appeal and a trial by jury, under Art. XVI, Sec. 8, of Constitution.

The constitutional provision is to be liberally construed to effect the intention of the people in its adoption, and it applies to incorporeal property: Reading *v.* Althouse, 93 Pa. St., 400.

*John Dalzell* for defendant in error.—The contention of the bridge company amounts simply to this: (1.) That the railway company, having failed to appeal to court within thirty days after its organization, became subject to such rates of toll as the bridge company's charter authorized it to impose; (2) that, though street cars are not named therein, they may be charged as carriages; and (3) that they must pay as carriages, or at a less rate, at the option and according to the discretion of the bridge company; and in default thereof, (4) that they must cease to cross the bridge.

The establishment of this position means the ruin of the street car company.

The plain common-sense construction of the law is this:

4 AMERMAN—31

[Monongahela Bridge Co. *v.* P. & B. R. R. Co.]

That the bridge company and the railway company are each public servants; that their respective rights were made by the legislature the subject of agreement, and in default thereof a matter to be decided by the Court of Quarter Sessions; that, in order that the public might not be delayed, a time was limited wherein the court's authority might be invoked—but no limitation as to time was placed on the court's right to act; and that the rights of the public are always, in default of agreement between the parties, in the keeping of the court.

No other construction of the law is consistent with the rights of the public in the premises.

The only law which has any relation to the use of the bridge by the railway company—and the only law which the respective parties have recognized by their acts as having any relation to such use—provides that the decision of the court "shall remain final and conclusive between the parties."

It is now urged that that decision shall not be final and conclusive, because of the provisions of Article XVI, Section 8, of the Constitution.

It does not seem necessary to do more than to quote this provision of the Constitution to show that it has no possible bearing on the facts presented.

There has been no taking of private property for public use; no property has been taken, injured or destroyed by any one; either by the construction or enlargement of their works, highways or improvements, or in any other way.

Mr. Justice CLARK delivered the opinion of the court, February 7th, 1887.

The Monongahela Bridge Company was incorporated under the provisions of an Act of Assembly, approved 19th March, 1810, [P. L., 101,] for the construction of a "bridge over the river Monongahela opposite the borough of Pittsburgh in the county of Allegheny." By the provisions of this Act, and the supplementary Act of 17th February, 1816, the company upon the erection of a bridge was authorized to erect gates and to demand and receive tolls in part as follows :—For every carriage of whatever description, used for the purpose of trade or agriculture, . . . . . having four wheels and drawn by two horses, twenty-five cents;" . . . . . "for every carriage of whatever description, used for the purpose of personal accommodation or pleasure, . . . . . having four wheels, and drawn by two horses, fifty cents."

In pursuance of the charter, and upon the faith of its provisions the bridge structure was erected at the foot of Smithfield street about the year 1820.

By the Act of 13th April, 1859, (P. L., 749,) incorporating

[Monongahela Bridge Co. v. P. & B. R. Co..]

the Pittsburgh and Birmingham Passenger Railway Company, and authorizing the construction of a street passenger railway from Fifth avenue and Smithfield street, across the Monongahela bridge, to Brownstown, it was provided as follows:— "That before the said railway company shall use and occupy any portion of any turnpike, plank road, bridge, or street, or road of any borough, if the said railway company and said turnpike plank road or bridge company, or councils of any borough, cannot agree upon the terms for the use thereof, within thirty days from the organization of the said company, the said company may apply by petition to the Court of Quarter Sessions of Allegheny county, setting forth the facts, and praying the court to appoint a time for the hearing of the parties, not more than twenty days from the filing of the said petition, of which time and place the opposite party shall have at least ten days' notice; and the court shall immediately, after hearing the said parties, proceed to fix and adjudge the rate of compensation to be allowed and paid by said company for the use of such turnpike, plank road, bridge, or street, and the terms on which it shall be used, and the mode and manner in which the same shall be kept up by the respective parties, which judgment shall be and remain final, and conclusive between the parties."

The first contention of the company is, that their charter constituted and must now be treated as a contract between the company and the commonwealth, and that the tolls and rates of charge, fixed by the charter, cannot be reduced, or in any way interfered with by the legislature, without the company's consent, and that upon this ground, the provisions of the Act 13th of March, 1859, already referred to, impairs the obligation of their contract, and to that extent are unconstitutional and void.

But, at the argument, it was shown that the provisions of the Act of 1810 and 1816, so far as they relate to the rates of charge for tolls, were expressly repealed by the further supplementary Act of 18th of May, 1871, providing for the erection of a new bridge, which was accepted by the company; and it was conceded, that the tolls are fixed by the provisions of the Act last referred to.

The Act of 1871 provides, that when the new bridge is open for travel, the rates for tolls, in part, shall be "for every carriage, wagon, buggy, or other wheeled vehicle of whatever description, and for every sleigh or sled, drawn by a single horse, the sum of ten cents, and for every additional horse, the sum of five cents." This Act having been passed not only subsequently to the Act of 1859, but subsequently, also, to the

fourth Constitutional amendment of 1857, it is plain that this contention of the plaintiff cannot be sustained.

It is contended, however, that the phrase, "or other wheeled vehicles of whatever description," used in the Act of 1871, is broad enough to embrace street cars, and that the company has a right to charge tolls upon them accordingly. It is a conceded fact, that in 1871, street cars in the cities of the commonwealth, were a well known instrument of conveyance; for twelve years and upwards they had been extensively used for passenger travel over the Monongahela bridge, and, if the framers of the Act of 1871, intended to embrace them within its provisions, it is very remarkable indeed, that they were not specifically mentioned. A street car certainly is a wheeled vehicle in the general sense of that term; it is a vehicle in the same sense that an ordinary railroad car is a vehicle, but both are vehicles of a somewhat extraordinary character; in this respect, that they can only be used a means of conveyance or transportation upon a permanent, continuous and connected track. To pass the railway company's cars over this bridge, their railway track must be permanently laid upon it, so as to connect with their tracks at either end. In other words the bridge must form part or parcel of the route of the railway. The vehicles which are specified in the Act of 1871 "carriages, wagons, buggies, sleighs and sleds," are all of that class which requires no such special appliance to promote their passage, and it is reasonable to suppose that the general phrase, "other wheeled vehicles of whatever description, used in immediate connection therewith, may refer to vehicles of the same general class or kind, as those particularly specified. In view then of the fact, that special provision had already been made in the Act of 1859, for the regulation of the rate of tolls which the railway company should pay for the passage of their street cars over the Monongahela bridge; that the railway company for twelve years and upwards had occupied the bridge with their track, and had paid, and the bridge company had received, tolls according to rates from time to time amicably agreed upon, in apparent conformity to the provision of that Act; that notwithstanding the extraordinary character of street cars as a means of conveyance, and of the unusual appliances required in order to facilitate their passage over the bridge, no particular reference was made to them in the designation of the tolls which might be charged under the Act of 1871. We are of opinion that it was not the legislative intention to embrace the railway company's cars in the provisions of that Act, and that the general designation, "other wheeled vehicles of whatever description," must be restrained to the same kind or general class of vehicles with those par-

ticularized.    The bridge was and is a public highway, and the commonwealth had the power to authorize such use of it for a public thoroughfare, as was reasonably consistent with the purpose of its erection, subject, of course, to the payment of such tolls as the company might lawfully and reasonably require; and for the passage of street cars over it the Act of 1859 prescribed the method by which the tolls should be ascertained.    The bridge company must be taken to have accepted the Act of 1871, in view of the provision, made for the railway company's cars, in the Act of 1859.

The further contention of the bridge company is, that assuming the power of the legislature to regulate the amount of their tolls, the exercise of power by the court of Quarter Sessions of Allegheny county, by the express terms of the Act of 1859, is limited to a period of thirty days from the original organization of the company, and cannot after that time be exercised.    We do not so understand the provisions of the Act of 1859.    It is perfectly plain, upon the slightest examination of the Act, that the application could not be made within thirty days from the organization of the company, and if it could not be made *after* the lapse of that time, the Act would have no force whatever.    There is no limitation of time; the proceedings are authorized to begin at any time after the expiration of the period stated, but not before, if the parties fail to agree.    It is equally plain that the parties did not agree, except for a limited time, and cannot now agree; no permanent arrangement was at any time effected; the Quarter Sessions therefore has full power in the premises.    It is true, the railway company had originally no right to the use and occupancy of the bridge until an agreement was effected, or an application made, but the railway company, under the temporary agreement referred to, has been and is now in the use of the bridge, without objection of the bridge company; the railway company is therefore not a trespasser; it has forfeited none of its rights under the Act of 1859, and is entitled to an adjudication under it.

Nor do we think the bridge company entitled to an appeal, under the eighth section of the sixteenth article of the Constitution; the very purpose of the erection of the bridge was to facilitate the passage of the public over it; to this end the bridge company laid the rails upon the bridge connecting with the railway company's tracks at either end, thus inviting this particular kind of conveyance to cross upon it.    The company's charter contemplates that they shall be paid by tolls and not otherwise, and the conduct of the company has been in accordance with their charter.    It does not appear that their property has been taken, injured or destroyed, they are not

therefore entitled to damages; they are entitled to tolls, according to a rate to be ascertained by law, and this proceeding is properly instituted for that purpose.

The judgment is affirmed.