STATE, Use of Ada Stumpf, Widow of Charles C.
Stumpf,

*vs.*

THE BALTIMORE AND BELAIR ELECTRIC RAIL-
WAY COMPANY and THE UNITED RAILWAY
AND ELECTRIC COMPANY OF BALTI-
MORE.

*Trolley cars: duty of persons crossing tracks; stop, look and
listen; Chapter* 687 *of Acts of* 1916; *contributory
negligence; assumes negligence of defendant.*

Chapter 687 of the Act of 1916, relating to motor vehicles,
does not apply to trolley cars, since by its terms the Act ex-
pressly excepts vehicles that are run only on rails.  pp. 416, 417

Even though such Act did apply to trolley cars, the failure
of the motorman to ring his bell as he approached a crossroad
in the country would not relieve a party, attempting to cross
the tracks, from the duty of observing reasonable precautions
for his own protection.                    pp. 416-417

Contributory negligence assumes the existence of negligence
on the part of the defendant, and is such negligence on the
part of the plaintiff as directly contributes to his injury and
debars him from recovery.                      p. 417

When the view or sound of an approaching train or car is
obstructed, a greater caution is required of a person approach-

ing the tracks, and he should always stop, look and listen before
attempting to cross.                                        p. 417

*Decided January 14th, 1919.*

Appeal from the Circuit Court for Baltimore County.
(HARLAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE,
JJ.

*Vernon Cook,* for the appellant.

*Thomas H. Robinson* and *Joseph C. France* (with whom
were *Elmer J. Cook, Philip S. Ball* and *J. Pembroke Thom*
on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

The accident which resulted in the death of Charles C.
Stumpf and which gave rise to this suit for the use of his
widow and children, occurred on the 24th of September,
1917, at the intersection of Harford road and German lane,
two of the public roads of Baltimore County.

The deceased and his family lived with his brother-in-law
Charles E. Weaver, on German lane, about seven-eighths of
a mile east of Harford road, and on the morning of the acci-
dent he and his brother-in-law left their home about six
o'clock in an automobile described as "a five passenger Over-
land," to go to their work in Baltimore City. The deceased
was operating the car and the route they proposed to take was
along German lane to Harford road and down Harford road
to the city.

The defendants operated a single track electric railway on Harford road, and the track, which was of a "T" rail construction, was located on the east side of the road and east of the driveway, so that in order to reach the driveway the deceased had to cross the defendants' track. At the crossing the space between the rails of the track was filled in, and the crossing was smooth. There was a house on the southeast corner of Harford road and German lane, which, according to the evidence adduced by the plaintiffs, when you approach Harford road on German lane from the east, obstructs the view of the railway track south of the crossing. But this evidence further shows that the house, which fronts on Harford road, is fourteen feet from the east rail of the track, and it appears from the protographs offered in evidence and exhibited at the argument in this Court that after you pass the line of the house there is a clear view of the track from German lane for a long distance south of the crossing.

Mr. Weaver testified that he and the deceased knew that the cars were "coming along there"; that he had his head as far forward as he "could against the glass" to see if he could see or hear a car "coming down the road"; that they slowed down "very much" at the crossing so that they could stop if they saw any reason to do so, but that they "heard nothing and saw nothing and continued across. He further testified as follows: "Q. Now, Mr. Weaver tell what else you did, if anything, at that time? A. I looked forward. Q. What did Mr. Stumpf do? A. I looked forward to see if I could see or hear a car and I could not, and Mr. Stumpf changed the machine into the second gear and blew his horn three or four times. It was a Klaxton. I had it put on because it was loud. Q. Did you see anything coming on Harford road? A. Not a thing. Q. Did you hear anything? A. No. Q. Then what did you do after blowing the horn? A. We continued to go on our way, and just as we approached the track we were struck by this car." He also stated that they were very close to the track when he saw the car; that the car was about eight or ten feet from them, and that in order to run

backwards you have to stop the car and reverse the gear. Other evidence was offered by the plaintiffs tending to show that the electric car was running at the rate of between twenty-five and thirty miles an hour, and that the motorman did not ring the bell as the car approached the crossing. At the close of the plaintiffs' testimony the case was withdrawn from the jury, and this appeal is from the judgment in favor of the defendants.

In 1886 CHIEF JUDGE ALVEY, speaking for this Court, said: "The rule is now firmly established in this State, as it is elsewhere, that it is negligence *per se* for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains; · and if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track, should stop, look and listen, before attempting to cross." *P., W. & B. R. R. Co.* v. *Hogeland,* 66 Md. 149. And in the later case of *Brehm* v. *P., B. & W. R. Co.,* 114 Md. 302, CHIEF JUDGE BOYD said: "It is now thoroughly established in this State that if the view be obstructed it is the duty of a traveler to stop, look and listen before attempting to cross a railroad." In the case of *Glick* v. *Cumb. & W. Elec. Ry. Co.,* 124 Md. 308, where the rule stated was applied to a collision between an electric car and an automobile, and where the Court held that since the introduction in common use of automobiles there was even greater reason for a strict adherence to the rule; the Court said: "In the case at bar the evidence produced by the plaintiff is to the effect that as he approached the crossing the car barn obstructed his view of the track beyond the crossing. He did not at any point stop to look and listen for a car, but attempted to rush over the crossing at the speed of eight or ten miles an hour. If he had stopped his car at or near the track he could have seen the approaching car and thus avoided the injuries complained of. Or if he had reduced the speed of his car and kept it under such control as would have enabled him to stop it as soon as he

saw an approaching car the collision would not have happened. Having failed to exercise these precautions, it is clear that his own negligence directly contributed to the accident."

Counsel for the appellants admits that the failure of the deceased to exercise the precautions required of him by the decisions referred to would be a complete bar to the right of the plaintiffs to recover but for the provisions of the Act of 1916, Chapter 687, which, he insists, changed the previously established rule applicable to such cases.

The Act in question purports in its title to be a revision of the laws of the State pertaining to motor vehicles, and to contain additional provisions relating thereto. Section 134 declares: "Whenever the term 'motor vehicle' is used in this sub-title, except when otherwise expressly provided, it shall be taken to include all vehicles, including motor bicycles or motorcycles, propelled by any power other than muscular power, except such vehicles as run only upon rails or tracks," and Part VI, sec. 163 of the Act, under the sub-title *"Rules of the Road,"* provides as follows:

"All vehicles, when being driven upon the highways of this State, upon meeting others shall turn to the right of the center of the highway so as to pass without interference, and in rounding curves shall keep as far to the right of the road as reasonably possible; and any vehicle overtaking another going in the same direction shall pass to the left of the vehicle so overtaken, provided the way ahead is clear of approaching traffic, and that no vehicle shall pass another from the rear at the top of a hill or on a curve where the view ahead is in anywise obstructed; any vehicle so overtaken shall promptly, upon signal, turn as far as reasonably possible to the right in order to allow free passage on the left. At the intersection of public highways all vehicles shall keep to the right of the center of such highways, and close to the right-hand side of the road when turning to the right, and pass to the right of the center of such intersection when turning to the left.

"All vehicles about to turn from the road upon which they are traveling into any intersecting road shall gradually reduce their speed to a point not exceeding twelve miles an hour for a distance of not less than twenty-five feet before beginning to make such turn, and where the view of the intersecting road is obstructed, preserve such reduced rate of speed until the turn has been completed.

"All vehicles shall have the right of way over other vehicles approaching at intersecting roads from the left, and shall give right of way to those approaching from the right.

"Any person operating any vehicle in a manner contrary to any of the provisions of this section shall be deemed guilty of a misdemeanor and, upon conviction, subject to a fine of not more than twenty-five dollars for each first offense."

Apart from the fact that the definition of motor vehicles contained in the Act excludes vehicles run only "upon rails or tracks," it is quite apparent that it would be impossible for those operating a steam or electric railroad to comply with the provisions of the Rules of the Road and that these rules do not apply to them.

The appellants do not contend that the Rules of the Road contained in the Act require the motorman on an electric car to stop or slow down his car as he approaches a crossing, but they insist that the third paragraph of the Rules imposes upon an electric railway company the burden of having the motorman on its car *"ring his bell when he approaches an intersecting road where his view is obstructed on his right-hand side."* The obvious answer to this contention is, that assuming that it is the duty of a motorman to ring his bell under such circumstances, and that the railway company would be chargeable with negligence for his failure to do so, that would not relieve a party attempting to cross a railway track from the duty of observing reasonable precautions necessary for his own protection and for the protection of those

traveling on electric cars. Contributory negligence assumes the existence of negligence on the part of the defendant, and is such negligence on the part of the plaintiff as directly contributes to the injuries complained of and disentitles him to recover. In the case of *Md. Central R. R. Co.* v. *Neubeur,* 62 Md. 391, this Court said: "The track of the railroad itself is the signal of danger to all those about to cross it; and travelers crossing the rails are bound to exercise reasonable care, having regard to the nature of the crossing, for their own safety and protection. They should, in all cases, before proceeding to cross, carefully look and listen, to ascertain whether a train is approaching; and the failure on the part of those in charge of the train to give the usual or required signals, such as the blowing of the whistle or the ringing of the bell, will not excuse or justify the traveler on the country roads in attempting to cross a railroad track without the exercise of that reasonable precaution, of looking and listening for the approach of a train. And if the experiment is made, without such precaution, the party acts at his peril and in default of this precaution, if an accident occurs by a collision with a passing train, the traveler must be held to have so far contributed to his own misfortune as to preclude him the right to recover against the railroad company." As we have said, where the view or sound of an approaching train or car is obstructed greater caution is required of a person approaching the crossing, and he should stop, look and listen before attempting to cross the tracks. So that if we were to adopt the appellants' construction of the Rules of the Road, viz: that they do not require those in charge of an electric car to slow down or stop at a road crossing, but do impose upon them the duty of ringing a bell as they approach the crossing, it would not alter the rule of reasonable care on the part of persons crossing the tracks of a steam or suburban electric railway. But as we have already stated the purpose of the Act of 1916, and the provisions of the Rules of the Road clearly indicate that they were not intended to apply to cars operated on tracks of electric or steam railways.

The cases to which we have referred deal with steam railroads, and with suburban and interurban electric railways such as the defendants operate. *Glick* v. *Cumb. & W. Elec. Ry. Co., supra.* Where electric cars are operated on the crowded streets of a city, due care on the part of the railway company demands a greater degree of care and caution on the part of those in charge of the car.

It follows from what has been said that the deceased in attempting to cross the track of the defendants' without stopping at a point on German lane, where he would have had a view of the track for a long distance below the crossing, to look and listen for an approaching car was guilty of contributory negligence, and that there was therefore no error in the ruling of the Court below withdrawing the case from the jury. In this view of the case it is not necessary to consider the other exceptions, for even if the evidence excluded had been admitted it would not have relieved the conduct of the deceased of its negligent character.

*Judgment affirmed, with costs.*