BALTIMORE TRANSIT COMPANY *v.* METRO-POLITAN TRANSIT AUTHORITY

[No. 43, September Term, 1963.]

510

*Decided October 30, 1963.*

The cause was argued before Brune, C. J., and Henderson, Prescott, Horney and Marbury, JJ.

*Joseph Sherbow,* with whom were *Edward F. Shea, Jr., Alan M. Wilner* and *Sherbow, Shea & Doyle* on the brief, for the appellant.

*John J. Ghingher, Jr.,* for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The Baltimore Transit Company (Company) brought suit in the Circuit Court of Baltimore City to determine whether or not a seat tax fee had been imposed upon its streetcars in favor of the appellee, Metropolitan Transit Authority (MTA). This appeal is from a decree in MTA's favor, ruling that said seat tax fee applied to streetcars as well as buses.

The questions raised, stated concisely, are: (1) did the Legislature intend, in enacting Section 13(a), *infra,* to impose a seat tax fee on streetcars; (2) is Section 13(a) a public local law in contravention of Article 11A, Section 4 of the Maryland Constitution; and (3) does the title to Article 64B, *infra,* violate Article III, Section 29 of the Constitution?

The facts are undisputed. The appellant is a public service corporation engaged in operating a mass transportation system in the Baltimore metropolitan area. The operation involves the use of both motor buses and streetcars. As a part of its system, the Company constructed tracks, and, for many years, operated streetcar lines along the streets of Baltimore City and Baltimore County. Prior to July 1, 1961, the Company operated its buses by the authority of permits issued by the Public Service Commission, pursuant to the provisions of Code (1957), Article 56, Sections 181-190. The Company was required to present to the Commissioner of Motor Vehicles those permits when making application for registration tags. Under Section 184, the Company was required to pay an annual fee of $4.00 per passenger seat of each motor vehicle. And the Company paid to Baltimore City, under Article 29, Section 26, of the Baltimore City Code (1950), an annual license fee of $5.00 for each regularly operated streetcar and trolley.

Under the provisions of Code (1962 Supp.), Article 64B, Section 9(b), after January 1, 1962, all authority and regula-

tory control which the Public Service Commission had or exercised over the Company was transferred to, and vested in, the MTA. Section 13(a) provides, *inter alia,* that:

> "Every mass transit or transportation system * * * shall pay a seat tax fee to the Authority, the same to be used * * * in defraying its necessary administrative expenses. * * * such a seat tax fee shall be in lieu of any such fee heretofore levied, paid or payable, by such mass transportation system * * *. The * * * fee payable under this article *shall be at the rate of $4.00 per seat, per vehicle* used by mass transit or transportation company * * *." (Italics ours.)

MTA interpreted Section 13(a) as imposing the seat tax fee on the Company's streetcars, as well as its buses. The Company contested the right to collect the seat tax fee, in so far as it was sought to be imposed upon its streetcars. This suit followed.

## I

Appellant first contends that the Legislature did not *intend* to impose a seat tax fee on its trolleys and streetcars, when Section 13(a) was enacted; hence, any construction thereof requiring the payment of such a fee would be contrary to the purpose and intention of the Act. The Company begins its argument by stating that it is a cardinal rule of statutory construction that statutes should be construed to effectuate the intention of the Legislature, and, where there is doubt or ambiguity as to the meaning of a statutory enactment, its legislative history should be considered in determining such intention, which will (where doubt, or ambiguity, exists) prevail over the rules of grammatical construction. This principle of law is well established, and, we think, may be conceded. *Welsh v. Kuntz,* 196 Md. 86, 75 A. 2d 343; *Tyrie v. Baltimore County,* 215 Md. 135, 140, 137 A. 2d 156; *Frazier v. Warfield,* 13 Md. 279; *Smith v. Higinbothom,* 187 Md. 115, 48 A. 2d 754; *Height v. State,* 225 Md. 251, 257, 170 A. 2d 212.

We, therefore, proceed to a consideration as to whether or not there is ambiguity in Section 13(a). Appellant cites seven cases, *City of Chicago v. Keogh,* 125 N. E. 881 (Ill. 1919), *Harris*

514

v. Johnson, 161 P. 1155 (Cal. 1916), Monongahela Bridge Co. v. Pittsburgh & B. P. Ry. Co., 8 A. 233 (Pa. 1887), Condor v. Griffith, 111 N. E. 816 (Ind. 1916), Georgia Power Company v. Clark, 25 S. E. 2d 91 (Ga. 1943), Whitney v. City of Seattle, 242 P. 2d 178 (Wash. 1952), and State, use of Stumpf v. Baltimore & Belair E. Ry. Co., 133 Md. 411, 105 A. 532; an excerpt from one of the definitions of "vehicle" in Black's Law Dictionary (4th Ed.); and 91 C.J.S., Vehicle, pp. 806-807, as authorities to sustain its claim that there is doubt as to whether the word "vehicle" as used in Section 13(a) includes its streetcars. We find it unnecessary to consider all of the cited cases in detail. Five of them concerned statutes regulating traffic; and different operating conditions between streetcars and other vehicles were held to justify the exclusion of the former from the definition of "vehicle." The rationale of these five cases seems to reach no further than to sustain the proposition that in statutes and/or ordinances constituting rules of the road, which are obviously not applicable to fixed-rail vehicles, the definition of "vehicle" will not encompass streetcars. (In Stumpf, supra, the pertinent act explicitly exempted vehicles that ran only on rails.) As was stated by the Court in Syck v. Duluth St. Ry. Co., 177 N. W. 944 (Minn.):

> "Appellant cites decisions of other states upon somewhat similar statutes wherein the word 'vehicle' has been held not to include street cars. [Citations.] But, either specifically or by the context, the statute in those states excludes street cars. Cases involving the law of the road for passing or meeting vehicles do not appear to us to bear upon the question in hand, for in the very nature of things such regulation cannot affect vehicles operated along fixed tracks."

The other two cases, Whitney and Pittsburgh are, likewise, not in point. In Whitney, it was held that a railroad train was not a "motor vehicle" within the meaning of a venue statute. The reference in that case to "streetcar" was dictum based upon Condor v. Griffith, supra, which will be considered below. Pittsburgh dealt with whether "streetcars" had to pay tolls under an act providing for the construction of a new bridge and

fixing toll rates for "every carriage, wagon, buggy, or other wheeled vehicle, of whatever description, and for every sleigh or sled, drawn by horse." The Court applied the principle of *ejusdem generis* to exclude streetcars from the definition of "vehicle," but said:

"A streetcar certainly is a wheeled vehicle in the general sense of that term. * * * To pass the railroad company's cars over this bridge their railroad track must be permanently laid upon it so as to connect with their tracks at either end. In other words, the bridge must form part or parcel of the route of the railway. The vehicles which are specified in the Act of 1871, —'carriages, wagons, buggies, sleighs, and sleds'—are all of that class which requires no such special appliance to promote their passage, and it is reasonable to suppose that the general phrase 'other wheeled vehicles, of whatever description,' used in immediate connection therewith, may refer to vehicles of the same general class or kind of those particularly specified."

This case, actually, seems to be authority for the proposition that normally streetcars should be included in the definition of "vehicles."

The *Condor v. Griffith* case, *supra,* is the common source of the statement quoted from *Black's Law Dictionary,* the citation from 91 C.J.S.,[1] and the dictum in *Whitney, supra,* men-

---

1. "Black first defines "vehicle" as "that in or on which a person or thing is or may be carried from one place to another, especially along the ground, also through the air; * * *." Later, in giving the interpretations given the word by different courts, it is said: "any carriage, conveyance, or other artificial contrivance used, or capable of being used, as a means of transportation on land;— not ordinarily including locomotives, cars, and street cars which run or are operated only over and upon a permanent track or fixed way * * *. Condor v. Griffith, * * * 111 N. E. 816, 818; Rev. St. U. S. § 4 (1 U.S. C.A. § 4)."

91 C.J.S. pp. 806, 807, states: "While the word 'vehicle' has been held to be sufficiently broad to include streetcars operating on tracks, it has been held that locomotives, cars, and streetcars which are operated only over and upon a permanent track or fixed way are not ordinarily considered to be vehicles."

tioned above. It, therefore, seems appropriate to examine this case closely. It was decided in 1916. There, liability for a collision required consideration of an ordinance that made it unlawful for vehicles to drive on the left side of the street "except in the necessary act of crossing the same or passing a vehicle going in the same direction, * * * *but the provisions of this section shall not apply to street railways* [italics ours]." During the course of its opinion, the Court made the following statement:

> "A vehicle is any carriage or conveyance used or capable of being used as a means of transportation on land. [It] will not ordinarily include locomotives, cars and street cars, which run and are operated only over and upon a permanent track or fixed way, and it will not be held to include them unless the context of the * * * statute clearly indicates an intention to do so." [2]

It seems proper to classify *Condor* as another rule-of-the-road case, and appropriate that the above quotations from *Black's Law Dictionary* and 91 C.J.S., p. 807, be confined to automobile law. The distinction between the word "vehicle" as used in automobile law and the Federal statutory definition is pointed out in *Cyclopedic Law Dictionary* (3rd Ed.), wherein it defines "vehicle" as follows:

> VEHICLE. By general Federal statutory definition: every description of carriage or other artificial contrivance used, or capable of being used, as a means of transportation on land. R.S. § 4; 1 U.S.C.A. § 4 (Aircraft excluded. 44 Stat. 572; Title 49 U.S.C.A. (Supp. § 177)).
> "In automobile law, every device in, upon or by which any person or property is or may be transported or drawn upon a public highway except devices moved

---

2. The authorities cited for this statement, without naming them, are a case where a statute concerning driving rules was held not applicable to streetcars; one that dealt with locomotives; another that dealt with ferryboats; and another that dealt with a bicycle.

by human power or used exclusively upon stationary rails or tracks. (Uniform Act Regulating Traffic on Highways, § 1.) 11 U. L. A. 8."

Finally, upon the matter under immediate consideration, appellant urges that the provisions of Code (1957), Article 66½, Section 2(67), which define "vehicles" for the purposes of the Motor Vehicle Article of the Code and exclude streetcars and devices propelled by electric power obtained from overhead trolley wire, but not operated upon rails or tracks, assist in creating a doubt as to the meaning of "vehicles" in Section 13(a). We do not find this argument persuasive.

For general definitions of the word "vehicle," see *Websters New International Dictionary, The American College Dictionary, Funk & Wagnalls, New Standard Dictionary*, (1938), which definitions are sufficiently broad to include streetcars. Also compare 55 Am. Jur., *Urban Transportation* § 7, which states: "The term 'car' or 'vehicle' as used in a statute or ordinance may include a street car." And for cases that have held streetcars to be vehicles, see *Bradley v. Minneapolis St. Ry. Co.*, 201 N. W. 606 (Minn.); *Syck v. Duluth St. Ry. Co., supra; Cleveland C. C. & St. L. Ry. Co. v. Urbana B. N. Ry. Co.*, 73 Ohio St. Rep. 364; *Foster v. Curtis*, 99 N. E. 961 (Mass.); and *Havins v. Dallas Ry. & Term. Co.*, 130 S. W. 2d 878 (Tex. Civ. App.). And see the Baltimore City Code (Flack 1950), Article 29, Sections 19 and 20, wherein it is provided that "* * * all *street railway cars*, trackless trolleys and buses * * * shall stop on the near side" of crossings, and "all owners and operators of *vehicles* (italics ours) failing to comply" with the provisions shall be subject to a fine.

From what has been said above, we hold that the meaning of the phrase "per vehicle used by mass transit or transportation company" is not ambiguous; hence the word "vehicle" therein must be construed as having been used in its general sense so as to include streetcars.[3]

Although we have held above that no ambiguity exists in

---

3. We note that the Legislature, by the Acts of 1963, chapter 886 amended 13(a) so as to provide for a four-dollar seat tax fee "per vehicle of any type * * * for the transportation of passengers."

Section 13(a) and, therefore, its meaning must be determined from its terms, we may add that we have carefully examined the legislative history of the Act as stated by the appellant, but we are unable to discover anything therein that would alter the result reached herein.

## II

Appellant's next assignment of error states that if Section 13(a) is interpreted as imposing a seat tax fee on streetcars, then it is invalid as being in contravention of Section 4 of Article 11A of the State Constitution, and the Charter and public local laws of Baltimore City. It argues that among the powers heretofore granted to the City under the authority of Section 2 of said Article 11A were the powers to "regulate the use of streets by street railways" (Baltimore City Charter [1949], Article 4, Section 6 [25]), and "to license and regulate all carriages and other vehicles owned or used * * * in said city" (Article 4, Section 6 [2] Code of Public Local Laws 1930); and, since Section 13(a), which purports to impose a seat tax fee on streetcars, is a "local law," it violates said Section 4. The answer to this contention depends upon whether or not Article 64B is a public local law within the meaning of Section 4.

The express powers granted to the City of Baltimore were originally set forth in Article 4, Section 6, Public Local Laws of Maryland. Section 2 of Article 11A (ratified November 2, 1915) provides that "* * * the powers heretofore granted to the City of Baltimore [named above] shall not be enlarged or extended by any charter formed under the provisions of this Article, but such powers may be extended, modified, amended or repealed by the General Assembly." And Section 4 (also ratified on November 2, 1915) provides:

"From and after the adoption of a charter * * * by the City of Baltimore * * *, no public local law shall be enacted by the General Assembly for said City * * * on any subject covered by the express powers granted as above provided. Any law so drawn

as to *apply to two or more of the geographical sub-di-
visions of this State shall not be deemed a Local Law,
within the* meaning of this Act. The term 'geographical
sub-division' herein used shall be taken to mean the
City of Baltimore or any of the Counties of this State."
(Emphasis added.)

Since Section 4 defines the term "geographical sub-division,"
the provisions of Section 13(a) of Article 64B relate to a "sub-
ject covered by the express powers" granted to Baltimore City,
and the provisions of Article 64B deal with an "area" contain-
ing "all of the territory [later enlarged] located within the
boundary lines of Baltimore City and Baltimore County with
the exception of the fifth, sixth, seventh and tenth election dis-
tricts of Baltimore County," our question narrows to whether
a law, which applies to one whole geographical sub-division and
part of another, is a local law within the purview of Section 4,
or must it apply to at least two *complete* geographical sub-
divisions, in order to be taken out of that category.

In order to make this determination, we naturally turn to a
consideration of the objectives and purposes intended to be ac-
complished by Article 11A and Section 4 thereof in particular.
In *State v. Stewart,* 152 Md. 419, 137 A. 39, this Court pointed
out that the wisdom of incorporating in the organic law of
this State such provisions as are contained in Article 11A had
long been urged prior to its adoption. The reasons assigned by
its proponents were that a larger measure of "home rule" would
thereby be secured to the people of the respective political sub-
divisions of the State in matters of "purely local concern, in or-
der that there should be the fullest measure of local self-gov-
ernment," and, with the local questions withdrawn from con-
sideration of the General Assembly, that body would have more
time to consider and pass upon "general legislation." In its
opinion, the Court states that the Legislature has "full power"
to designate the subjects in respect to which the power of leg-
islation is delegated to local authorities under Article 11A and
it has reserved unto itself the power and authority to enlarge,
repeal or change the grant of powers theretofore made, provided
it does so in a proper manner. The Court then held that a law,

the subject-matter of which was "exclusively local to Baltimore City," was a local law within the meaning of Article 11A.[4]

It seems clear to us that Article 64B is not a local law within the meaning of Article 11A. It is not "exclusively local to Baltimore City," nor is it "exclusively local" to those portions of Baltimore County encompassed within the "area" in which MTA is operative. Therefore, any attempt to legislate for the entire "area" by the authorities of either Baltimore City or Baltimore County would be ineffective. And, since certain of the provisions of Article 64B relate to "subject[s] covered by the express powers" granted to Baltimore City and also to those granted to Baltimore County, the General Assembly would not have authority to legislate for the "area," if such legislation were local laws within the purview of Section 4 of Article 11A. With the large and thickly settled metropolitan districts of Maryland adjacent to Baltimore City and Washington, D. C., it seems particularly appropriate that some legislative body should have authority to legislate for "areas" comprising at least a portion of two or more of the "geographical sub-divisions" named in Section 4. We are unable to conclude that the provisions of Section 4 require an enactment of the General Assembly to apply to two or more *complete* sub-divisions in order to take it out of the category of being a "local law," within the meaning of Article 11A. We think, and therefore hold, that Article 64B does not impinge upon the provisions of Section 4.

## III

Section 29 of Article III of the Maryland Constitution provides, in part, that "every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title," and this provision has been a prolific source of litigation. Although we have repeatedly held that every presumption favors the validity of a statute and it will not be declared unconstitutional unless it plainly contravenes the Constitution, liti-

---

4. For cases illustrating the type of law, which, although "local" in its immediate operation, nevertheless is "general," see Gaither v. Jackson, 147 Md. 655, 128 A. 769; Denhard v. Baltimore, 167 Md. 416, 173 A. 267; and Dasch v. Jackson, 170 Md. 251, 183 A. 534.

gants seize upon every opportunity to claim a violation of the above provisions, if they feel there is any possibility of a successful challenge.

It will be unnecessary to set forth, in great detail, the objects of the above quoted constitutional provision, as we have already done so on numerous occasions. For two recent cases, see *Leonardo v. County Comm.*, 214 Md. 287, 298, 134 A. 2d 284; and *Allied American Co. v. Comm'r*, 219 Md. 607, 150 A. 2d 421. See also Everstine, *Title of Legislative Acts*, 9 Md. L. Rev. 197. It will suffice here to state that its purposes are to prevent the combination in one act of several distinct and incongruous subjects, and to inform the members of the legislature and the public of the nature of the proposed legislation. The cases arising under this Article may be generally divided into those in which it is contended that the title is not sufficiently descriptive, and those wherein it is claimed the title is misleading. This Court has consistently held that the Constitution is complied with if the title of the statute *fairly* advises the legislature and the public of the real nature and subject matter of the legislation sought to be enacted, and it is unnecessary that the title be an abstract of the text of the proposed statute, nor need mention be made of the means and the methods by which its purpose is to be accomplished. *Leonardo v. County Comm., supra.*

The title to the Act reads:

> "AN ACT to add a new Article 64B to the Annotated Code of Maryland (1957 edition), to follow immediately after Article 64A thereof, and to be under the new title 'Metropolitan Transit Authority', creating a Metropolitan Transit Authority as an instrumentality of the State of Maryland, providing generally for its membership, powers, duties, operations and procedure, relating generally to mass transit facilities in a certain metropolitan area in and around Baltimore City, authorizing the Authority to license, regulate, acquire or operate mass transit facilities in this metropolitan area, relating also to the present powers of the Public Service Commission over such

facilities, and generally concerning and relating to mass transportation in the said metropolitan area of Baltimore City."

The crux of appellant's contention here is that Article 64B (construed in the manner as we construed it above) imposes a tax not disclosed by its title. Chief reliance is placed upon *Culp v. Commrs. of Chestertown,* 154 Md. 620, 141 A. 410, but that case is distinguishable from this one, for the reasons given by Judge Hammond in *Allied American Co. v. Comm'r, supra,* (219 Md. at 614).

The title, we think, fairly and amply apprised the Legislature and the public of the purpose of the Act, and it was not misleading. It stated that the statute created MTA as an instrumentality of the State, and provided generally MTA's powers, duties, operations and procedures relating generally to mass transit facilities. It stated further that the Act authorized MTA to license, regulate, acquire and/or operate mass transit facilities; and that the Act dealt with matters "generally concerning and relating to mass transportation." We hold that it was not necessary to abstract the Act in its title; and the seat tax fee imposed in Section 13(a) was a valid and constitutional provision of the statute.

The questions involved herein were thoroughly and capably briefed by counsel on both sides, and the case was ably argued. The Court received material assistance therefrom in its determination of the issues, and acknowledges its appreciation thereof.

*Decree affirmed, with costs.*