## YELLOW CAB CO. v. WALTER BAILEY.

Western Section. August 5, 1927.

Petition for Certiorari denied by Supreme Court, December 17, 1927.

1. **Trial. When defendant puts on evidence he waives motion for directed verdict at the close of the plaintiff's evidence.**

When the defendant moves for a directed verdict at the conclusion of the plaintiff's evidence and the same being overruled, then puts on evidence himself, he thereby waives his motion and the court looks to the entire evidence.

2. **Justices of Peace. A justice's warrant does not charge separate counts but simply gives notice to the defendant.**

A justice warrant does not charge separate counts. It simply gives notice to the defendant, the nature of the cause of action, the damages claimed and in the instant case the plaintiff notified the defendant as to the time and place and that he was making his claim for injuries to his body and injury to his automobile, caused by the negligence of the defendant and its driver.

3. **Automobiles. The owner of an automobile is not liable for negligence of his chauffeur while on a personal errand.**

The owner of an automobile is not liable to one who is injured by the negligence of his chauffeur where the driver is on an errand personal to himself or is making a detour for his own purposes.

4. **Master and servant. Evidence. Evidence held to show chauffeur was on master's business.**

In an action to recover damages alleged to be due to the negligence of defendant's chauffeur where the evidence showed that the chauffeur was driving a taxi cab and that he had taken passengers to a certain point and in returning to his office in the usual way he had passed an ice plant where he stopped to get ice for himself which he intended to leave at his home which was between the ice plant and the taxicab office, held that the chauffeur was still on his employers business.

Appeal in Error from Circuit Court, Shelby County; Hon. P. J. Lyons, Special Judge.

Affirmed.

Wilson, Gates & Armstrong and Emmett W. Braden, of Memphis, for plaintiff in error.

James A. Padget, of Memphis, for defendant in error.

OWEN, J. Walter Bailey, a colored man, recovered a judgment against the Yellow Cab Company for the sum of $120. The cause was tried before the Circuit Judge without the intervention of a jury. The suit was commenced before a Justice of the Peace, and the plaintiff alleged that his car was damaged by being struck by an automobile belonging to the Yellow Cab Company at or near the Consumers Ice Company, 620 Beale avenue, Memphis, Tennessee, on or about August 3, 1926; that said accident was caused by the careless operation of the defendant's automobile, and that the plaintiff also suffered bodily injuries, and he sues for said injuries and damage to his automobile. There was a judgment by the Justice of the Peace, an appeal to the circuit court, and it appears that Hon. P. J. Lyons, a member of the Memphis bar sat as Special Judge for Hon. H. W. Laughlin.

Counsel for defendant, a corporation, which operates taxicabs in the City of Memphis, stated in answer to plaintiff's contention before the court that "we plead not guilty and contributory negligence. We shall seek to prove that this plaintiff was drinking or drunk at the time this accident happened. We shall further prove that the taxicab had backed out from the Consumers Coal &

Ice Company where all the wagons and trucks are constantly coming out of that one place, there, and that the defendant pulled into the Consumers Ice Company's platform and backed out, and had started his cab west, and that this was the same direction in which this plaintiff was going, and that while the defendant's taxicab was going west the plaintiff ran into the back end of defendant's cab; that the defendant sent a man down immediately to investigate the accident and the plaintiff was too drunk to talk any business at all."

It appears that Beale avenue runs east and west, in the City of Memphis; that the Consumers Ice Company is located on this street; that the driver of the Yellow Cab Company was a man by the name of Crigger; that he stopped at the east end of the platform where the Consumers Ice Company delivers ice to cars or trucks; that the driver of the taxicab got fifty or seventy-five pounds of ice, put it in his taxicab and then backed said taxicab out and struck the plaintiff's car.

There was a conflict of evidence before the Circuit Judge, and at the conclusion of all the evidence the defendant made a motion for a judgment in its behalf. This was overruled, and the trial judge summed up the facts, as follows:

"Gentlemen, in the case I find that Walter Bailey was traveling west on Beale avenue, on August 3, or thereabouts, in his proper place in the street, and that this Yellow Cab driven by Mr. Crigger, backed out from near the east end of the building without warning, and backed into his automobile.

"Mr. Crigger says that he had backed out and started west; that his car was not even stopped at the time. Walter Bailey testifies that he backed into him without warning. That makes it a practically fifty-fifty go as between them. But the plaintiff put on the witness stand John Ward, who was there on the platform at the Consumer's Ice Company, and who has no interest—at least, none was shown here in this lawsuit—who was in a good position to observe anything and everything that took place there, at the time of this accident.

"John Ward testified that the driver of the Yellow Cab backed out fast, and backed into Walter Bailey.

"The proof here shows that the office of the Consumers' Ice Company is at the east end of the building, and that that wing of the building extends out further than the rest of the building. The court knows that to be true, and that a person traveling west on Beale avenue in an automobile is not in a position to observe vehicles in the Consumers yardway there, or driveway, that are anywhere near the east end of the building. It is the duty of any automobile driver backing into the street to give notice that he is

about to back out into that street. There is no proof here that any warning was given by the driver of the Yellow Cab that he was going to back from the Consumers Ice driveway there out into the street.

"The conduct of all the parties immediately after the accident would indicate to the mind of the court that the plaintiff's contention in this case is sound. He says that immediately after the accident, he had Capt. Darragh, or Capt. Darragh's son, at the Ice Company to 'phone for the police. Mr. Mackasey, on the witness stand, testifying for the defendant says, that when he came there upon call from the driver, that he found out that somebody there, it might have been Capt. Darragh, had telephoned for the police. Now Mr. Crigger contradicted that by saying that he himself 'phoned for the police. Mr. Mackasey and Mr. Crigger both testified that the driver, Bailey, the plaintiff in this case, was drunk. That does not seem reasonable to the court, that that man was drunk, for several reasons. First of all, he 'phoned for the police, and was there for quite awhile afterwards. If the police came and found a negro out there in an automobile drunk, everybody knows that that negro would have been arrested and put on the docket, and that would have been proof here to show it. This court further knows that with this negro claiming damages there, Mr. Mackasey there at that time, had he been in that drunken condition, Mr. Mackasey, to protect his employer, as he rightfully should have done, would have had this negro arrested and charged with being drunk and driving an automobile while intoxicated. So the court places no faith in the statement that this man was drunk.

"Now, as to whether he was on the master's business at this time: The conduct of the defendant company after this accident happened, would indicate to the court that very little faith, in fact, none, should be placed on that. They have a system at the Yellow Cab Company, as testified to here, of reporting in from the nearest station. They also had, as Mr. Crigger testified, penalties for those who do not report from the nearest station when it is ascertained by the company. Mr. Mackasey, went to the scene of this accident immediately after the accident. He talked with Mr. Crigger there. It was his duty to make a report if this man detoured, and was not reporting properly, and it was his duty to mark up demerits against this driver. The driver is still in the employ of the company and has testified on this stand that he received no demerits on account of this accident. Now, this court believes that had he gone out of his way and had detoured and was not on the master's business and was reporting from the wrong station, and an accident happened, that if he was not fired for it, he would at least have received demerits for his misconduct while so employed.

"Therefore, all of the circumstances leading up to this accident, and immediately thereafter, would indicate to this court that the preponderance of the evidence is in the plaintiff's favor.

"As to the question of damages: It is true that he did not have a doctor. He testified that he had Dr. Ed. Sheeley, who is a pharmacist, a reputable man, in this community one man who stands as high among the druggists as any man in the community; that he prescribed treatment for him. That is not altogether unusual. Mr. Sheeley is within just a few minutes call of this court house, and could have been used to contradict that statement.

"The plaintiff says that he lost six days and he made about five or six dollars a day. He has proven here as damages to his automobile, a bill—the mechanic testified to an amount that would be about $53, but he says he rendered a bill for about $45 or $46. Well, taking the lowest bill to be due, why, he has sustained damages to his automobile in the sum of $45.

"There has been no proof here as to the reasonable rental value of that particular car at the time, so there will be no allowance for that.

"The court therefore, gives judgment for the plaintiff for the sum of $120; $75 personal damages, and $45 for the damage to his car."

The defendant filed a motion for a new trial, which was overruled and disallowed, and he prayed and was granted an appeal to this court and has here assigned four errors.

The second, third and fourth assignments of error all raise the question that there is no material evidence to support the judgment and the court erred in overruling the defendant's motion for a new trial at the conclusion of plaintiff's testimony and at the conclusion of all the testimony.

Of course this court looks to see if there is any evidence.

The third assignment that the court should have sustained the defendant's motion at the conclusion of plaintiff's evidence, is overruled because when the defendant does not stand upon his motion but introduces proof this court looks to the entire evidence.

In Coal & Ice Co. v. Bennett, 8 Hig., 210, it is said: "A defendant who desires to rely upon the weakness of plaintiff's case should not, after overruling of his motion for a directed verdict, introduce testimony. If he submits evidence and then renews his motion, the court should consider the case as a whole, including the corroborating or aiding testimony, if any, brought forward by the defendant." See also Gerber Co. v. Mrs. L. D. Smith, 150 Tenn., page 255, 263 S. W., 974.

The second and fourth assignments will be considered together.

The first assignment is, that the court erred in overruling the defendant's motion to require the plaintiff to amend his pleas at the

beginning of the trial. It is insisted that the summons issued by the Justice of the Peace shows on its face that it contains two separate and distinct causes of action in one count. This assignment is overruled. A justice's warrant does not charge separate counts. It simply gives the notice to the defendant, the nature of the cause of action, the damages claimed, and in this case the plaintiff notified the defendant as to the time and place and that he was making claim for injury to his body and injury to his automobile caused by the negligence of the defendant and its driver.

The sole question to be determined by the second and fourth assignments of error is whether or not the chauffeur Crigger at the time of the accident was acting beyond his scope of employment; was not about the apparent business of his master; that he was on an errand personal to himself, and that he had stepped aside temporarily from his master's business to purchase some ice and take it to his home.

We are of opinion from the facts established and the presumption raised that Crigger, the chauffeur was about his master's business; that the chauffeur was acting within the apparent scope of his authority or employment at the time of the accident. If the chauffeur had departed from the defendant's business and was not acting within the course of his employment, then there would be no liability.

The owner of an automobile is not liable to one who is injured by the negligence of his chauffeur where the driver is on an errand personal to himself or is making a detour for his own purposes. R. C. L., Vol. 2, sec. 33; Goodman v. Wilson, 129 Tenn., 464; Bell v. Meister Tire Co. (Shelby county), decided by the Court of Civil Appeals at Jackson, Tennessee, 1924.

Reliance is based upon the holding of the Court of Civil Appeals in the Meister case, but as we understand the two cases, the Meister case is quite different and can be easily distinguished from the instant case. In that case a service truck was sent out on the Poplar pike to render service to a crippled automobile. The chauffeur of the defendant was told where to go and to come back the way that he went. After completing the repair work on the automobile, he drove five or six miles out in the country, got his wife, and was bringing her to their home when the accident occurred. He had left the employment of his master and was on a personal errand of his own. In the instant case the chauffeur had gotten two passengers at the Union Station, about five o'clock p. m. on the day of the accident. He took them (both ladies) to their respective destinations, one passenger being carried to 1500 East Madison street and the other to 1100 East Moreland street. After the last passenger alighted the chauffeur turned west. He stated that he

was still looking for business and would have picked up a passenger if anyone had applied, as he was returning to one of the stands of the defendant company in the business section of the City of Memphis. He was going west when he passed the Consumers Ice Company in the 600 block of Beale avenue. The chauffeur lived in the 500 block of Linden avenue. He decided to get a block of ice and carry it in his car by his home on his return to the office to check out. We infer that he was due to check out about 6:00 o'clock, and that he would then go to his home. We presume that when he checked out the taxicab was turned over to another chauffeur. The chauffeur said that he would have accepted passengers until he got his ice, and then he would not have taken a passenger because the passenger would possibly want to ride a half day, and his ice would have melted. This is more of a conclusion as he looks back and attempts to reason. We do not think that twenty-five or thirty-five cents worth of ice would have interfered with this chauffeur if some passenger had wanted to engage him and his taxicab. To permit the defendant to escape upon this line of proof, then every time a chauffeur stopped his cab to get a drink at a soda fountain, or buy a package of cigarettes at a cigar store, or stopped at a grocery store to buy a pound of coffee or loaf of bread would be holding that he had departed from the scope of his employment and was engaged in his own personal business. Crigger drove his taxicab all over Memphis looking for passengers, and he would pick them up at any place and take them to any place they directed. It is true that there is testimony that the defendant had certain rules by which the chauffeur made reports, and that they should call the general office after the passenger had been discharged. It also appears that this rule was not enforced and very little attention was paid to it. The manager of the defendant appeared upon the scene of the accident shortly after it occurred. We presume he learned the full facts at that time. The chauffeur received no criticism for stopping the car at the Consumers Ice Company to procure a block of ice for himself.

Counsel for the defendant did not rely upon this defense when he was stating his defenses to the trial judge at the outset of the trial.

The chauffeur who, on a return trip after delivering goods for his master, goes a block out of his way to get some money at his home, but with the intention of going immediately to the place of business of his employer and of performing other duties, does not thereby abandon his employment. Fleischmann v. Howe, 213 Ky., 110, 28 S. W., 496.

In the Meister case, supra, the chauffeur Tyson immediately ran away when he struck Mrs. Bell, abandoned the automobile of Meister and was never employed by the defendant thereafter. It

is quite different in the instant case. The chauffeur never received a reprimand or demerit for his action and was continued in the employ of the defendant the balance of the day on which the accident occurred and was working for defendant at the time of the trial.

It results that we find no error in the judgment of the lower court and the assignments of error are overruled and disallowed. The plaintiff will recover of the defendant the amount of the judgment, interest, and the cost accrued in the lower court for which execution will issue.

Execution will issue against the defendant and his surety on appeal bond for the cost of the appeal.

Heiskell and Senter, JJ., concur.