ELY et al. v. RICE BROS. et al. No. 6.—167 S. W. (2d) 355.

Eastern Section.   May 5, 1942.

Petition for Certiorari denied by Supreme Court, October 3, 1942.

Berke & Fleming, of Chattanooga, for plaintiffs in error.

Spurlock, Spears & Noone, of Chattanooga, for defendants in error.

McAMIS, J.   These two suits involve the liability of Rice Brothers Auto Company for injuries sustained by plaintiffs Thomas S. Ely and wife Lucy Ely when struck by an automobile owned by Rice Brothers Auto Company and driven by William B. Faircloth.   At the conclusion of plaintiffs' proof in chief the trial judge directed a verdict in favor of defendant Rice Brothers Auto Company and the case is here for a review of this action.

Rice Brothers Auto Company, herein referred to as defendant, at the time in question was engaged in the sale of automobiles in Chattanooga.   In connection with its business it also maintained a used car lot for the purpose of disposing of used cars.   Faircloth and others were engaged as salesmen to sell used cars, Faircloth having been in defendant's employ for fifteen years.   His status, whether that of an agent or servant of defendant or an independent contractor, is a controverted issue.   Under the facts to be stated we think this was a question for the jury to determine.

As indicated defendant introduced no proof but the undisputed proof introduced by plaintiffs shows that Faircloth's duties, in addition to selling cars, required him to

open and close the used car lot for which purpose he carried a key; that he was required to look after used cars in the lot, reporting needed repairs to defendant's officers; that he was required to gather from prospects, for defendant's use, information bearing upon the credit standing of prospects and that, for this purpose, he was furnished blanks by defendant.

In connection with the sale of cars, the proof shows that he was furnished a car for demonstration purposes and to enable him to canvass the city for prospects. At times he was furnished the name of prospects but, generally speaking, prospects were originated as a result of his own efforts. When ready to close a trade, he was required to submit the offer of the prospect to defendant, as we presume, along with information as to the credit standing of the prospect. If acceptable to defendant, the sale would then be closed and Faircloth paid a commission which constituted his sole compensation for looking after the used car lot and selling cars.

To facilitate his activities in behalf of defendant, Faircloth was furnished gasoline and oil for the demonstration car and, for reasons not definitely appearing, was allowed one gallon of gasoline each day for going from defendant's place of business at night to his home and returning the following morning.

It appears from Faircloth's testimony that he was required to open the used car lot at a definite time in the morning and close at a definite time at night. When he desired to be off from work he was required to notify defendant and testified that his request might or might not be granted depending upon whether defendant could spare his services at the time.

It thus appears that defendant, by the contract of employment, had control over the activities and mode of

travel of Faircloth. It could and did require his presence on the used car lot, at least at opening and closing time and while there he performed services in defendant's interest. His mode of travel was dictated by the nature of the services to be performed as well as by the terms of the agreement. The fact that he was paid a commission rather than a salary is not controlling.

■ To say the least, the facts presented are as consistent with the relationship of master and servant as with that of an independent contractor and the proof is insufficient to show as a matter of law that defendant did not retain to a material degree the right to direct, in material respects, the manner of carrying out the acts to be performed by Faircloth. This is the controlling issue. Mayberry v. Bon Air Chemical Co., 160 Tenn., 459, 26 S. W. (2d), 148; Income Life Insurance Co. v. Mitchell, 168 Tenn., 471, 477, 79 S. W. (2d), 572; Powell v. Virginia Construction Co., 88 Tenn., 692, 13 S. W., 691, 17 Am. St. Rep., 925; Marshall v. South Pittsburg Lumber and Coal Co., 164 Tenn., 267, 47 S. W. (2d), 533, 544; Tennessee Valley Appliances, Inc., v. Rowden, 24 Tenn. App., 487, 146 S. W. (2d), 845.

■ ■ An employer seeking to be relieved from liability for injuries for the act of another done in behalf of the employer must carry the burden of showing that the act of the one inflicting the injury was in the performance of an independent contract and not the act of an employee or servant. Welch v. Reiling et al., 170 Tenn., 698, 99 S. W. (2d), 216. And where the facts presented are as consistent with the relationship of agency as that of independent contractor, the one asserting the existence of the latter relation has the burden of proof. Tennessee Valley Appliances, Inc., v. Rowden, supra.

Defendant cites and relies particularly upon the cases of Income Life Insurance Co. v. Mitchell, 168 Tenn., 471, 473, 79 S. W. (2d), 572, and American Nat. Insurance Co. v. Poole, 24 Tenn. App., 596, 148 S. W. (2d), 14. Both of these cases involved insurance salesmen engaged in building an insurance debit. In both the salesman furnished his own car and bore the expense of its operation. In both cases he was free to select his own mode of travel, could work when and where he pleased within the assigned territory and was required to report only once each week upon sales and collections. It was no part of the duty of the salesman in either case to look after the business establishment of the employer or personal property on its premises. For these reasons we think these two cases are distinguishable from the one under consideration.

Other cases cited from foreign jurisdictions involving automobile salesmen are distinguishable upon their facts mainly upon the ground that the salesman was either engaged solely in the sale of cars or furnished his own car and bore the expense of its operation.

While each case must be determined upon its own facts, the general rule is that an automobile salesman who has no power to fix the price, dictate terms of sale, extend credit or pass on securities given in case of credit, who does not become responsible to the dealer and owner for the payment of any bills and who is only authorized to make sales of cars belonging to the dealer must be regarded as the agent of the dealer and not an independent contractor. 5 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., Sec. 2968. See also 27 Am. Jur., 496, Sec. 14, dealing with salesman on a commission basis and Tennessee Valley Appliances, Inc., v.

Rowden, 24 Tenn. App., 487, 491, 146 S. W. (2d), 845. Other cases in point are digested at 107 A. L. R., 425.

■ While not decisive, the fact that the employer owns and furnishes for the use of the one engaged to do the work an appliance necessary for its performance tends to show that the relationship is that of master and servant rather than that the person doing the work is an independent contractor. Porter v. Withers Est. Co., 201 Mo. App., 27, 210 S. W., 109.· And see, also, 27 Am. Jur., 493, Sec. 12.

The circuit judge appears to have directed a verdict upon the ground that, at the time plaintiffs were injured, Faircloth was not acting within the course and scope of his employment. Plaintiffs insist that, under the facts to be stated, this issue was erroneously withdrawn from the jury.

Plaintiffs sustained severe injuries as a result of the negligent operation of the car furnished Faircloth by defendant, as they were attempting to board a street car on Dodds Avenue near the Vance Avenue intersection in Chattanooga. The accident occurred between 7:30 and 8:00 on Sunday evening April 6, 1941.

On the preceding day, Saturday April 5, 1941, Faircloth had contacted a prospect who lived in the Foust Addition in Chattanooga and on Sunday after going to the used car lot of defendant at about 3:00 o'clock in the afternoon where he spent some time talking with another employee of defendant, he made a trip to the Foust Addition for the purpose of seeing the prospect there. Not finding the prospect, he returned to the City and visited a restaurant located, as we understand from the record, across the street from the used car lot of defendant. He is uncertain how many prospects he saw during that afternoon and was unable to remember the names of any.

Later, the exact time not appearing, he stopped at another restaurant where he talked for a while with another of defendant's salesmen or employees and where he drank a bottle of beer. According to the undisputed proof, the restaurant was located upon his direct route home either from the Foust Addition or defendant's place of business. He is obviously mistaken as to the time spent at the restaurant or else came to the restaurant later than indicated by his testimony but the proof is undisputed that when he left the restaurant he continued on a direct route toward his home.

Bearing in mind that, by the terms of the contract of employment, defendant was obligated to furnish Faircloth a car and gasoline for its operation for going to and from his work, we think it must be said that in driving the car to his home Faircloth was engaged within the course and scope of his employment. By having the car in his possession he could use it in making sales or attempting to do so while on his way to and from home as well as while there and, while defendant may have derived no advantage from the use of the car by Faircloth in going to his home at night, it was to its advantage for him to have it so that he could return early the next morning to the used car lot. Having regard for the footing upon which men usually conduct their business, it is hardly to be supposed that defendant furnished the car and supplied it with gasoline for going to and from Faircloth's home without expecting that some purpose of its own would be served.

"Generally, where a servant has permission to use a car in order to better execute his business to go to and from his meals and home, he is acting within the scope of his employment. 5 Am. Juris., 718, sec. 379; 45 A. L. R., 490; 68 A. L. R., 1058; 80 A. L. R., 732; Goff v. Clarksburg

Dairy Co., 86 W. Va., 237, 103 S. E., 58; Fisick v. Lorber, 95 Misc., 574, 159 N. Y. S., 722; Depue v. Salmon Co., 92 N. J. L. 550, 106 A. 379; Brennan v. White Motor Co., 210 App. Div., 533, 206 N. Y. S., 544; Kish v. California State Automobile Ass'n., 190 Cal., 246, 212 P., 27. Whether the driver of an automobile using his employer's car to go to and from work is acting within the scope of his employment, is a question of fact for the jury.'' Meyn v. Dulaney-Miller Auto Co., 118. W. Va., 545, 191 S. E., 558, 563.

Other cases of similar bearing include Tidal Pipe Line Co. v. Black, 161 Okl., 136, 17 P. (2d), 388 and our own case of Hall Grocery Co. v. Wall, 13 Tenn.. App., 203.

In the latter case the servant did not, as here, have express authority to use the vehicle in going to his home at night but it had been customary for him to do so and it was held that the employer was liable for an injury inflicted as a result of the negligence of the driver while on the way to his home. The underlying basis of the conclusion announced appears to have been that the servant's employment contemplated the operation of the vehicle for the purpose for which it was being used at the time.

In this case it is insisted that the accident occurred on Sunday and, in any case, that Faircloth had deviated when he stopped at the restaurant and began satisfying his own personal wants. As we have indicated, his purpose in going to the Foust Addition on Sunday afternoon was to see a prospect he had contacted on Saturday and his testimony is that he was engaged in his regular routine on the day in question, it appearing that he had made it a practice for many years to stay around the used car lot a part of the day on Sunday and make sales if possible. It is to be inferred that some of these sales over such a

long period of time were brought to the attention of defendant and that it ratified the action of Faircloth in making sales on Sunday although its place of business was not open on that day.

It is true Faircloth deviated from his employment when he entered the restaurant for the purpose of satisfying his own personal wants but, if he had not stopped at the restaurant, his route home would have been the same and he would have passed the intersection where plaintiffs were injured. Although the deviation continued for a longer period than in Yellow Cab Co. v. Bailey, 5 Tenn. App., 349, the circumstances are otherwise the same. In that case a taxi driver stopped to purchase ice for his personal use while on a return trip to the office of the Company and, after resuming his course, struck and injured plaintiff. It was held that after he returned to his course he had resumed his employment and was acting within its course and scope.

■■ We think the question of whether Faircloth had returned to the service of defendant after stopping at the restaurant should have been submitted to the jury. The time spent at the restaurant is not clear from the proof and the extent to which he became intoxicated while there is a matter as to which there is some conflict in the evidence. If the jury should find, from all the evidence, that he stopped at the restaurant for the purpose of becoming intoxicated or engaging in a frolic after completing his day's work, the mere fact that he was on the regular route to his home customarily followed in going from his employment would not make defendant liable. On the other hand, as the jury might find from the record as it now stands, if he stopped there merely as a customary incident of travel, intending to resume his journey home and was in the act of doing so when the accident

occurred, as held in Yellow Cab Co. v. Bailey, supra, the mere fact that he stopped at the restaurant would not prevent his resuming his employment after fulfilling the purpose of the deviation.

We, therefore, conclude that the learned circuit judge was in error in directing a verdict in defendant's favor and its results that the judgment below must be reversed and the cause remanded for a new trial. It will be so ordered and costs of appeal will be taxed to defendant in error.

Portrum and Ailor, JJ., concur.