McDOWELL, PYLE & CO., INC., *v.* MAGAZINE
SERVICE, INC.

[No. 63, October Term, 1932.]

*Decided February 1st, 1933.*

The cause was argued before BOND, C. J., PATTISON,.
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter L. Clark,* with whom was *Clater W. Smith* on the brief, for the appellant.

*Blades & Rosenfeld,* submitting on brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The Magazine Service, Inc., appellee, recovered a judgment against McDowell, Pyle & Co., Inc., appellant, for damage done to the truck of the former in a collision with a truck of the latter. The only exception is to the refusal of the two prayers of the appellant for a directed verdict, one that the uncontradicted evidence shows that the appellee's driver was guilty of contributory negligence, and the other that the driver of the appellant's truck was not, at the time of the collision, acting within the scope of his employment.

The appellant is in the merchandise business at 221 Pratt Street in Baltimore City and has several delivery trucks, one of which is operated by Walter Wrightson, the driver in this case. On the morning of July 31st, 1931, Wrightson left the appellant's store with four orders for customers, the last of which was to the Rodgers Forge Golf Club, on the York Road in Baltimore County. He made this delivery, and all he then had to do in the line of his duty was to return with his truck to his employer's place of business and receive goods and orders for his next trip. No matter where he was, he procured his own lunch, wherever happened to be convenient, and on this day, it being about his lunch time (then after 1 o'clock), he decided to go to his home on Esther Place in East Baltimore. The direct route from the golf club to appellant's place of business is down Greenmount Avenue to Hillen Street, to Fallsway, to Pratt. The collision happened at the intersection of Preston and Luzerne Streets, twelve blocks from Wrightson's home. Luzerne Street is about twenty blocks east of Greenmount Avenue, so that the deviation from his natural route would be twice thirty-two blocks. Whether the deviation of route affects the question of liability depends on whose business is being pursued at the time.

The driver's day's work began at seven o'clock in the morning, and ended when he completed his deliveries and returned his truck to his employer's garage. Asked what his working hours were, he said: "Well, I tell you, when we come to work in the morning we don't have no certain hours to be there and, I never have no certain hours when I get down. Whatever time I leave that's when I get down. I mean, whatever time I leave there—whenever I get back then I can go home." "Supposed to report at seven o'clock in the morning" and "to stay on the job as long as there is any merchandise to be delivered that day"; sometimes he is kept "late at night." "Q. Do you have any regular time for taking your lunch? A. No, sir; I don't have any regular time. Wherever I get a chance to eat my lunch I stop and eat. Q. Depending entirely upon the business you do? You have no general instructions from your employer as to where you shall eat? That is left to your judgment. Is that right? A. Yes, sir; well, the boss would let me take a truck if I wanted to. (The Court): They told you to take the truck while you are out? A. Well, lots of times, like on Tuesdays or Wednesdays, the boss likes me to eat my lunch about eleven o'clock, you see, so that I can be ready to get my load ready so that I can leave for down through Annapolis and southern Maryland. (The Court): They don't want your lunch to interfere when you have a long haul? A. No, sir; no sir. (The Court): Those days you have to take your lunch early? A. Yes, sir. (The Court): And a day like this it didn't make much difference what time you got your lunch? A. No, sir."

He said his route was a country route, and that was the reason he had no certain hours. On this occasion he had made his last delivery, decided to go home for lunch, and on the way there had the accident. He was allowed to take the truck whenever he was near enough to go home for lunch. "(The Court): And you save money by going home for lunch anyway, and when you are near home you go there for lunch, and when you aren't near home you go to some restaurant or somewhere else? A. Yes, sir." Omitting

repetitions, this is the uncontradicted, undisputed evidence which, the appellant argues, shows that, at the time of the collision, the driver, Wrightson, was on his and not his master's business, and the appellee argues that this testimony in itself presents a disputed question of fact as to whether Wrightson was at the time acting within the scope of his agency.

There is no uniformity of decisions on the subject of this appeal. If an owner were responsible for whatever might happen during the hours of his agent's employment, the solution of such cases as this would be easy, and some of the cases go to almost this length. There is a presumption of liability from the fact of ownership of a vehicle causing an accident, operated at the time by one in the general employment of the owner, and that at the time the employee was acting within the scope of his master's business; "but this presumption is only *prima facie,* and may be rebutted and overcome by evidence to the contrary adduced during the trial by any of the parties to the suit; and, where such evidence is undisputed and uncontradicted, it becomes properly a question for the court." *Wells v. Hecht Bros. & Co.,* 155 Md. 618, 623, 142 A. 258, 261; *International Co. v. Clark,* 147 Md. 34, 127 A. 647; *Jordan Stabler Co. v. Tankersly,* 146 Md. 454, 126 A. 65; 22 C. J. 124, 156. The decisions are in such hopeless confusion that it is useless to attempt a review of them with any idea that they can be reconciled. They all start out with the idea that the questions of agency and scope of employment are ordinarily questions of fact for a jury, and that from ownership of the vehicle liability is presumed, though rebuttable. The differences arise from the application of these general rules to the facts. It is plain, therefore, that each case depends largely upon its own facts and the construction to be adopted with reference to them.

The question here, where the deviation is not disputed, is whether the driver of the appellant's automobile had so far stepped aside from and abandoned his employer's business as to make him, at the time of the accident, independent of

his master's business, and wholly disconnected with it. The rule, as stated in *Symington v. Sipes,* 121 Md. 313, 318, 88 A. 134, 136, is: "In 28 *Cyc.* 39 the rule is stated to be that the owner is not liable 'where the servant or chauffeur, although originally taking the vehicle out for the owner's use, deviates from the owner's business and goes upon some independent journey for his own or another's pleasure or benefit." The facts in that case differ from this, in that the accident there occurred when the chauffeur went on a drinking expedition after he had been directed to take the car to a certain public garage.

It is not contended that, if the appellant's driver was engaged on business of his own, and not on any business of his employer, the appellant would be liable. While there is no denial of the fact that the driver at the time of the accident was bent on business of his own, namely, going to his home for his lunch, he was doing one other piece of business, and that was working his way back, during business hours, to the store of his employer, at the time driving a truck containing the empty ginger ale bottles picked up at the golf club. *Tuttle v. Dodge,* 80 N. H. 304, 116 A. 627. It has been decided by this court that the mere deviation by a driver from the most direct and usual route does not remove the presumption of liability which attaches to the employer from the ownership of the vehicle involved in an accident. *Jordan Stabler Co. v. Tankersly,* 146 Md. 454, 126 A. 65. If the appellant's driver used the truck to go from appellant's store for his lunch, as he had frequently done, with or without express permission of the employer, there would have been no liability, as that would have been merely an accommodation, or a favor granted him (*Myers v. Shipley,* 140 Md. 380, 116 A. 645; *Fletcher v. Meredith,* 148 Md. 580, 129 A. 795), and would have been wholly independent of, and unmixed with, his employment. "The master is not liable if the servant has abandoned his obligations, and is doing something not in compliance with the express or implied authority given, and is not acting in pursuance of the general purpose of his occupation or in connection with the doing of the master's

work." *Fleischner v. Durgin,* 207 Mass. 435, 93 N. E. 801, quoted in *Symington v. Sipes, supra.*

The nearest approach to the instant case in the state is *Jordan Stabler Co. v. Tankersly,* 146 Md. 454, 126 A. 65. The appellant in that case had two stores, one on Madison Avenue in Baltimore, the other at Roland Park. One afternoon the appellant's driver took a load of goods from Madison Street to Roland Park, where he was given four orders for delivery on his return to Baltimore, and told to then take the truck to the garage. He made the four deliveries, then deviated from the usual and most direct way to the garage and made two other stops, delivering a package at one place and collecting some bottles at another, after which the collision in that case occurred. He had taken two young men with him on the trip, who were still with him when the two additional stops were made. The driver, Chapman, was discharged after the accident and did not testify; his companions, who did testify, knowing nothing of the connection, if any, of the two last stops with the employer's business. It was held that, in the absence of a satisfactory explanation from the employer, there was no legally sufficient evidence that Chapman was not acting within the scope of his employment when the accident happened; the concluding paragraph of the opinion (page 463 of 146 Md., 126 A. 65, 68) saying: "To hold in this case that the servant was not acting within the scope of his employment at the time of the accident, we would be compelled to disregard the legal presumption that he was so acting, as well as the evidence of the delivery of the package on Eutaw Place and the collection of bottles on Lanvale Street, and base such a conclusion upon the single fact that he was not pursuing the most direct route as determined by the general instructions given him by the appellant. This we are entirely unwilling to do." *Nattans v. Cotton,* 150 Md. 466, 133 A. 270.

The evidence here is that the appellant's driver, when he left Pratt Street, had four deliveries of goods to make, the last at the Rodgers Forge Golf Club, where he took up his

employer's empty bottles. He had finished his master's business up to that point, and the return trip was just as much the master's business as the delivery of the goods, and, unless he abandoned its business in order that he might do something having no connection with it, he could not be said to be outside the scope of his employment. The nature of his occupation required him to obtain his lunch where most convenient, and, when it suited his convenience to go home for lunch, he did so, and it was agreeable to his "boss" that he should. It is true that his home was thirty or more blocks east of the most direct route by way of Greenmount Avenue to Pratt Street, though that would not take much time and saved the driver some expense, and all of the time on the return trip he was, in spite of the excursion to his home, working his way back to the store of his employer, in a truck on which he had some property of the employer which it was the driver's duty to return. According to the decision in the *Jordan Stabler* case, if the driver had merely changed his course on the return trip so as to take him by his home, without stopping, the deviation would not have taken him out of the scope of his employment. What difference, then, would it make if he stopped the truck long enough to get his lunch? Even though he had an accident before reaching his home, which prevented his driving there in the appellant's truck, the purpose of the diversion must be considered, together with the trip thence to Pratt Street, and should be treated as if it had been an accomplished fact in the decision of this question. Taking all the facts, accomplished and in contemplation, into consideration, there does not appear to have been any time after the driver left appellant's place of business that he was not engaged in his employer's business, even though, on the return trip, he mixed his own with it. In the opinion of this court, there was affirmative evidence, in addition to the presumption from ownership of the truck, that the driver, Wrightson, was, at the time of the collision with appellee's truck, engaged in the business of his employer, and that the interrupted trip to his home was no more than a

deviation of route, and that it was a question for the jury as to whether at the time he was engaged in his own or his employer's business, or both.

The other question submitted for decision is that of contributory negligence, on which an instructed verdict was prayed by the appellant. The authority upon which the appellant relies is *Colgate & Co. v. United Rwys. & Elec. Co.,* 156 Md. 472, 144 A. 519, 520, wherein this court, in holding the plaintiff's driver guilty of contributory negligence, said: "When he first looked to his left the part of the street which seemed to be 'clear' was restricted by the intervening houses on the northern side, which he had not yet reached, and his second look for west-bound traffic was delayed until the collision was beyond his power to avert. In thus looking too soon and too late to avoid the danger, the truck driver did not exercise the degree of care required by ordinary prudence." In that case, as in this, the plaintiff's driver was coming to a street intersection from the right. In the *Colgate* case the defendant was a street car company (*Stumpf v. Balto. & B. Elec. R. Co.,* 133 Md. 411, 105 A. 532); in this, both parties are auto truck owners. In the *Colgate* case the contributory negligence rule was applied to a driver who said, "I just stepped on the gas and tried to beat him across," while in this case its application is sought by a defendant whose driver, with the right of way against him, said, "I thought maybe I could make it across the street."

The appellee's truck was going east on Preston Street, the appellant's south on Luzerne Street. The appellee's driver, Roland H. Rhine, said that, when he was from ten to fifteen feet back of the building line on Luzerne Street, he looked to his left and saw and heard nothing, and, because he could not hear anything, assumed that appellant's truck was drifting down Luzerne Street. Asked on cross-examination when was the next time he looked to his left, he said, "When I started across the street I didn't see nothing, so I started across the street and then I seen this other truck coming down." On direct examination, he had said: "When I got to

the intersection I looked then, but I did not see him until I got almost across the street and that's when I seen him coming down. When I looked around all I could see he was making the curve or turn like, around Preston Street, he was making a left turn." He further testified that the appellant's truck had room enough to have gone behind him, but instead, and in this he was corroborated, the driver of the appellant's truck turned his car to the left, and it is the appellee's theory that otherwise the collision would not have happened, and it is in this respect that this case differs chiefly in its facts from the *Colgate* case. Manuel Zinder, a witness who was on the seat with Rhine, testified: "I saw the McDowell-Pyle truck coming south when it was almost on top of us. At that time our truck was almost all the way across. The McDowell-Pyle truck was making like a left hand turn going east. The right front of the McDowell-Pyle truck struck the left front part of our truck, right near the door, fender," did not know its speed, but "it was coming fast, all right."

The appellant's driver, Wrightson, testified that, when he reached the building line on Preston Street, he saw the other truck forty or fifty feet from the building line to the west (his right). He then said, "I knew right then I could get past him, so after I got to about the center of the street he was then about ten feet from me, so I swung to my left and that is where he struck me." Rhine was going "about forty, forty-five" miles per hour, "was talking to that boy with him; he wasn't even watching where he was going." He said when he reached the building line at Preston Street he had slowed down to eight or ten miles an hour. Asked by the court, "Why didn't you stop and give him the right of way, coming at forty-five miles per hour, when you were going only eight or ten?" he said, "Well, I slowed up and I thought maybe I could cross and that is when he hit me on my side." Again asked why he did not stop, he said, "Well, I thought maybe I could make it across the street."

There is here evidence from which the jury might conclude that the collision would not have happened if Wrightson had gone straight ahead or had turned to the right in-

stead of to the left; or they might reasonably have concluded that it would have been prudent for him to have stopped, as he could have done if he was going only eight or ten miles an hour when he was entering the intersection, and saw the plaintiff's driver unconscious of the danger, instead of making a race to cross the street ahead of a car coming forty miles an hour and only forty or fifty feet away, and which, under the law, had the right of way. There was no such emergency as confronted the driver in *Burhans v. Burhans,* 159 Md. 370, 150 A. 795. As was said in *McCarthy v. Clark,* 115 Md. 454, 464, 81 A. 12, 16: "In the face of this testimony the court below was clearly right in refusing to rule that the conduct of the plaintiff amounted in law to contributory negligence. To warrant such a ruling, there would have to be 'some such feature of recklessness as would leave no opportunity for difference of opinion as to its imprudence in the minds of ordinarily prudent men' (*Balto. & O. R. Co. v. State, use of Wiley,* 72 Md. 40, 18 A. 1107, 1108, or 'some prominent and decisive act in regard to the effect and character of which no room is left for ordinary minds to differ' (*Baker v. Md. Coal Co.,* 84 Md. 27, 35 A. 10)"; and, as said in *Cooke v. Baltimore Traction Co.,* 80 Md. 551, 558, 31 A. 327, 329, "where the nature and attributes of the act relied on to show negligence contributing to the injury can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law."

*Judgment affirmed, with costs.*