TREGELLAS ET VIR *v.* AMERICAN OIL COMPANY

[No. 191, September Term, 1962.]

96

*Decided March 12, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*Marvin Ellin* for the appellants.

*W. Hamilton Whiteford* and *Douglas R. Due* for the appellee.

HORNEY, J., delivered the opinion of the Court.

Maria Victoria Tregellas and her husband (the Tregellases or plaintiffs) sued the American Oil Company (the oil company or defendant) to recover damages for personal injuries, loss of services, and for medical and hospital expenses and property damage, arising out of the rear-end collision of an automobile owned by the oil company with the automobile of the Tregellases.

At the close of all the evidence, the trial court granted the motion of the oil company for a directed verdict on the premise that the uncontradicted evidence disclosed that the operator of the company automobile (even though he was an employee) was not acting as an agent of the company at the time of the accident. From the judgment for costs entered on the instructed verdict against them, the Tregellases appealed.

The collision occurred on Cold Spring Lane in Baltimore City on a Sunday afternoon in September of 1960, while the plaintiff-wife was waiting to make a left turn into a shopping center. The oil company, conceding that the momentary inattention on the part of the operator of its automobile while he was reaching for some papers that had slipped from the seat to the floor of the vehicle was the proximate cause of the collision, based its defense on the theory that the employee was not acting within the scope of his employment at the time of the collision.

The employee (Jay N. Carney) was a salesman for the oil company. As such his duties were confined to calling on service stations located in a well-defined area, in parts of Montgomery and Prince George's counties, in which he worked under the supervision of the Washington district office of the company. The territory covered by the salesman was exclusively within the jurisdiction of that office. He lived in an apartment in Hyattsville which was in the area he serviced. He was the son of a retired executive of the oil company. And, as he was a young, unmarried man, recently out of college, he visited the home of his parents in Baltimore every weekend.

On such visits he usually arrived in the city on Friday and would leave to return to Hyattsville on Sunday. To commute between Hyattsville and Baltimore, he had habitually used the company automobile assigned to him as a sales representative. Such use was contrary to company regulations but he had done so with the knowledge of his immediate superior who did not object to it. On arriving in Baltimore on weekends, he parked the company automobile until it was time to return to Hyattsville and used his parents' car whenever he had need for it. The salesman died from injuries received in another accident before this case was tried.

In an attempt to show the existence of an agency relationship at the time of the accident between the company and its salesman, the plaintiffs produced evidence that the salesman on prior occasions had called on a service station operator in Hyattsville on Saturdays and Sundays and that he had previously taken orders for oil products from him on Sunday evenings between six and eight o'clock.

The plaintiffs produced other evidence to the effect that the

operator of the company automobile told the investigating officer that he was enroute to Hyattsville and that he wanted to get the papers in the automobile before the tow truck took it away because he needed them "for an appointment." And there was also evidence that an agent of the company had negotiated and made settlement with a third party involved in the accident and that the same agent had offered to settle with the plaintiffs.

The plaintiffs also offered to call a witness who would testify to the effect that the operator of the company automobile had stated to an eyewitness at the scene of the accident that he was "on company business" and was worried about the reaction of the company. But the court declined to permit the introduction of the statements into evidence.

On the other hand, the defendant produced evidence to the effect that the salesman was assigned to the Washington (not the Baltimore) district office and that a salesman in one district, because of the highly competitive nature of the business, was not permitted to cross district lines and solicit business in another district.

Three supervisors in the Washington office further testified that the normal work week of salesmen was from Monday through Friday, and one of them testified that he had never heard of a salesman making calls on Sunday. There was also evidence that company policy required that an automobile assigned to a salesman should be used for soliciting only in the district in which he was employed; that there was no company business that would have taken the salesman to Baltimore on the weekend of the accident; and that the company had not authorized him to solicit any business on that occasion. The father of the salesman testified that his son had confined himself solely to social activities on the weekend in question.

Written reports made by the salesman following the accident also indicate that he was not on company business. On the day after the accident he reported to the company (on a company form) that he was "on way to home" in answer to a question on the form: "for what purpose was vehicle being used?" Three days later, in giving a detailed statement to a representative of independent investigators employed by the oil company, the salesman related that he had been visiting his parents over the

weekend and that he was on his way back to his apartment in Hyattsville at the time of the accident. Other than these reports, his expense account for the week in question contained no entries for either Saturday or Sunday although there were daily entries for the other days of that week. And in a batch of about twenty-five gasoline purchase slips covering a three-month period only one showed a purchase on a Saturday.

Whenever, in a case such as this, there is proof or it is conceded that a motor vehicle causing a collision is owned by a defendant other than the operator, and the operator is in the employment of the owner, a rebuttable presumption arises that the operator of the vehicle was acting within the scope of his employment. See, for example, *Fowser Fast Freight v. Simmont,* 196 Md. 584, 78 A. 2d 178 (1951) ; *Taylor v. Freeman,* 186 Md. 474, 47 A. 2d 500 (1946) ; *Gutheridge v. Gorsuch,* 177 Md. 109, 8 A. 2d 885 (1939).

Cases of this kind usually fall into one of three categories. There are cases in which the defendant either offers no evidence on the issue of agency or the evidence offered is so inconsequential as to be incapable of rebutting the presumption. There are cases in which the evidence offered by the defendant is so conclusive as to completely destroy the presumption of agency. And there are cases in which the evidence falls between the first two categories. If a case falls in the first category the plaintiff is entitled to an instruction that the defendant is liable to him for the negligence of the operator of the vehicle. If a case falls in the second category the defendant is entitled to a directed verdict in his favor. But if the case falls in neither of the first two categories, the case should be submitted to the jury. Both the first and second categories present only a question of law to be decided by the court. But the third category presents a question of fact to be considered by the jury.

In a recent case, *Grier v. Rosenburg,* 213 Md. 248, 131 A. 2d 737 (1957), involving questions as to when an issue of agency should be submitted to, or be withdrawn from the jury, we had occasion to remark (at p. 255) that "[i]t would be difficult, if not impossible, to lay down a rule, that would apply in all cases, as to when the evidence is so slight that it is insufficient to be considered by the jury in rebuttal of the pre-

sumption of agency, or so conclusive as to require a directed verdict for the defendant" and that "[t]hese matters must depend upon, and be decided by, the facts developed in each individual case." See also *Safeway Trails, Inc. v. Smith,* 222 Md. 206, 159 A. 2d 823 (1960).

In the case at bar, where there is considerable evidence to rebut the presumption that the salesman was acting as an agent of the oil company at the time of the accident, it would appear that the primary question posed by the appeal — whether the trial court erred in withdrawing the case from the consideration of the jury—must be answered in the negative unless the questions presented by the appellant, or at least some of them, have substantial merit. These include contentions: (i) that it was error to refuse to admit the *res gestae* statement of the operator of the company automobile that he was "on company business"; (ii) that reaching for the "business papers" that had slipped from the seat to the floor of the automobile was an act within the scope of the employment of the operator; (iii) that the settlement and payment of the claim of a third party involved in the accident was evidence of agency; (iv) that proof of agency did not have to be clear and conclusive to justify submission of a question to the jury; and (v) that on the whole there was sufficient evidence of agency to require submission of the case to the jury.

As the decision in *Grier v. Rosenburg, supra,* points out, we think the plaintiffs in this case—in order to obtain a reversal of the ruling that the defendant was entitled to a directed verdict—must show either that they had already introduced sufficient evidence to contradict the evidence subsequently produced by the defendant or that the evidence offered by the defendant was not so conclusive as to shift the burden of going forward with the evidence back to the plaintiffs.

This will require a careful examination of the questions presented by the appellants.

(i)

The refusal of the trial court to admit the statement of the salesman to the effect that he was "on company business," even though it was spontaneously made immediately following the collision, was not improper under the circumstances in this case.

Regardless of what the rule may be in other jurisdictions, the law in this state is well settled that in the absence of independent proof of facts from which agency may be inferred, the existence of agency cannot be proved by the unsworn declarations of the agent. *Deane v. Big Spring Distilling Co.*, 138 Md. 388, 113 Atl. 891 (1921). See also *Wells v. Hecht Bros. & Co.*, 155 Md. 618, 142 Atl. 258 (1928), where it was held that an admission by an employee that he was acting on behalf of his employer at the time of the accident was not admissible to prove agency in the absence of other evidence of the existence of agency. No Maryland cases are cited to support the contention that the declaration of the employee was admissible under the general rules of evidence and we have found none. Moreover, the cases and texts cited by the appellants [1] are not in point here.

(ii)

Nor was the reaching for the "business papers" of the salesman— which it is conceded was the proximate cause of the collision—an act within the scope of employment under the circumstances. Not only was the day not a normal work day, but the automobile was in a place other than that prescribed for its use while on company business, and, in fact, was then being used by the operator for a personal purpose. Furthermore, there was no proof that the slipping of the business papers (assuming they were those of the employer rather than the employee) from the seat to the floor of the company automobile created a situation that required the operator of the automobile to perform an act for his employer at that time instead of for himself. In a somewhat similar situation in the case of *Butt v. Smith*, 148 Md. 340, 129 Atl. 352 (1925), it was held that the presence of the employer's products in the employer's truck operated by an employee on a Sunday when he was not then on company business did not require submission of the question of agency to the jury. This, we think, was the situation here.

---

1. *Young v. Lamson*, 160 A. 2d 873 (Vt.); *Kramer v. Nichols-Chandler*, 220 Pac. 338 (Okla.); Restatement, *Agency*, § 13, comment b; Restatement, *Agency*, 2d, § 236.

(iii)

The contention that the settlement and payment of the claim of a third-party motorist was evidence that the operator of the colliding automobile was an agent of the oil company is likewise without substantial merit.

While the third party was permitted to testify that his claim had been paid and that he had released the oil company, the record discloses that such evidence was admitted subject to exception and was subsequently struck out by the trial court on its own motion when, just before withdrawing the case from the jury, it pointed out that the directed verdict it was about to grant would correct any errors it had made with respect thereto.

We think the evidence was properly eliminated from the case. The general rule is that evidence of payment by a defendant in a negligence case to a third person of a claim arising out of the same accident as that from which the claim of the plaintiff arose is not admissible. See the annotation in 20 A.L.R. 2d 304, § 2, and the cases collected therein. See also 4 *Wigmore on Evidence* (3d ed.), § 1061 (c) and (d) and the cases listed in the footnotes. Of the many cases in point, several are particularly apposite here. In *Hawthorne v. Eckerson,* 77 F. 2d 844 (C.C.A. 2d 1935), where a plaintiff was allowed to prove agency and liability by showing that the defendant had settled with a third person involved in the same accident, it was held on appeal that a compromise is not in itself evidence of liability or proof of agency. And in *National Battery Co. v. Levy,* 126 F. 2d 33 (C.C.A. 8th 1942), *cert. den.* 316 U. S. 697 (1942), it was held that payment of the claim of a third person injured in the same accident is not admissible as an admission against interest to prove that the servant of the defendant whose negligence caused the injury was acting within the scope of his employment. See also *Bratt v. Western Air Lines,* 169 F. 2d 214 (C.C.A. 10th 1948), where it was said (at p. 217) that "where several persons are injured in the same accident, a compromise with one cannot be shown in an action by another." And see *Scott v. Torrence,* 25 S. E. 2d 120 (Ga. App. 1943), where it was held that statements of a witness, who had sustained injuries in an accident that he had received payment therefor, were properly excluded. The case of *Snyder v. Kenan Oil Co.,*

68 S. E. 2d 805 (N. C. 1952), relied on by the appellants, is clearly distinguishable on the facts.

### (iv) and (v)

Since we have held that the so-called *res gestae* statement was properly excluded, that reaching for the business papers was not an act within the scope of the employment of the salesman, and that the settlement and payment of the claim of a third party was not proper evidence, such of the evidence as remains to prove agency at the time of the accident is clearly inconsequential. Such as there is shows only that the salesman on prior occasions had called on a service station operator in Hyattsville on Saturdays and Sundays and had previously taken orders for oil products on Sunday evenings and that the salesman had told the investigating officer at the scene of the accident that he had to get his papers out of the damaged automobile before it was towed away because he would need them for an appointment. Clearly this was not enough to take the case to the jury on the issue of agency.

While it may be that proof of agency does not have to be clear and conclusive to justify submission of a question of agency to a jury, it is apparent there must be something more in the way of proof than what remains of the evidence produced or proffered on behalf of the plaintiffs in this case. Furthermore, it is apparent (as was hereinbefore suggested) that the evidence offered by the defendant is so conclusive as to completely destroy whatever presumption of agency there may be in the only remaining portions of the evidence produced by the plaintiffs.

Since this case falls squarely into the second category of the cases herein described, it is clear that the trial court did not err when it withdrew the case from the consideration of the jury, and we so hold.

The judgment will therefore be affirmed.

*Judgment affirmed; the appellants to pay the costs.*