PHILLIPS, Etc. *v.* COOK et al.

[No. 281, September Term, 1964.]

216

*Decided June 8, 1965.*

The cause originally was argued before HAMMOND, MAR-
BURY, SYBERT, OPPENHEIMER and BARNES, JJ., and reargued
before the entire Court.

*Frederick J. Green, Jr.,* and *C. MacNair Speed* (on both arguments), with whom were *Lord, Whip, Coughlan & Green* on the brief, for the appellant.

*Everett L. Buckmaster* (on both arguments), with whom were *George W. White, Jr., Samuel D. Hill* and *Buckmaster, White, Mindel & Clarke* on the brief, for the appellees.

MARBURY, J., delivered the majority opinion of the Court. HAMMOND and SYBERT, JJ., dissent. Dissenting Opinion by HAMMOND, J., at page 224, *infra*.

This is an appeal by Daniel Phillips individually, and trading as "Dan's Used Cars", one of the defendants below, from a judgment in favor of Delores Cook and Marshall Cook, her husband, plaintiffs below, entered upon the verdict of a jury in favor of the plaintiffs against the defendants, Isadore Harris and Daniel Phillips, individually and as co-partners trading as Dan's Used Cars, in the Superior Court of Baltimore City. The verdict was rendered in an action by the Cooks to recover damages for injuries sustained by them as a result of a collision involving a partnership automobile operated by Harris and bearing dealer plates issued to Dan's Used Cars by the Department of Motor Vehicles.

The Cooks sued Harris and Phillips, individually, and as co-partners trading as Dan's Used Cars. The accident in question occurred on January 7, 1960, at about 6:50 p.m., when a partnership automobile operated by Harris struck the rear of a vehicle driven by one Smith, which in turn hit an automobile operated by Delores Cook, at the intersection of Reisterstown Road and Quantico Avenue in Baltimore. Harris was on his way home from the used car lot when the accident occurred. He was using the most direct route from the partnership lot and was only five blocks from his home at the time of the incident.

In October 1959, Harris and Phillips entered into a partnership on an equal basis under the name of "Dan's Used Cars" for the purpose of buying and selling used automobiles. Phillips owned the lot and a gas station adjacent to it. He went

into the partnership with Harris because the latter had the experience and money which he did not have to put into the business. This partnership agreement was oral and it was agreed between the partners that each would have an equal voice in the conduct and management of the business.

Neither of the partners owned a personal automobile or had one titled in his individual name. It was agreed as a part of the partnership arrangement that Harris would use a partnership vehicle for transportation to and from his home. Under this agreement, he was authorized to demonstrate and sell such automobiles, call on dealers for the purpose of seeing and purchasing used cars, or go to the Department of Motor Vehicles on partnership business after leaving the lot in the evening and before returning the next day. Both Harris and Phillips could use a partnership automobile as desired. Such vehicles were for sale at any time during the day or night and at various times and places they had "for sale" signs on the windshields. Harris had no regular hours to report to the used car lot but could come and go as he saw fit. Phillips testified that it was essential that Harris have a partnership automobile for his transportation to and from his home, and that it was the most practical way to operate. It is also significant to note that both Harris and Phillips testified at the trial that each paid for the gasoline used in the partnership automobiles they drove. However, Phillips said at the time of the taking of his deposition, which was admitted in evidence, that the gasoline used came out of the used car business and was for cars that were for sale on the lot. He admitted that the Mercury sedan involved in the collision was for sale and had been sitting on the lot. This car was titled in the name of the partnership and Phillips could have used it if he wanted to. After the accident, he objected to Harris using the dealer's tags because "he didn't want to get in any more accidents." About a week later, the partnership was terminated and Harris left the business.

Harris did not appeal. The questions involved in Phillips' appeal are: I, did the lower court err in refusing to grant appellant's motions for a directed verdict in that there was no legally sufficient evidence from which a jury could find that Harris was acting within the scope of the partnership business

arrangement and for its benefit; II, was there prejudicial error in the trial court's charge to the jury with respect to the use of the automobile and the effect of the presumption arising out of its ownership by the partnership; and III, did the lower court err in refusing to direct a verdict as to appellant individually.

I

If there was any evidence, no matter how slight, viewed in the light most favorable to appellees, that Harris, in using the partnership vehicle, was acting within the scope of the partnership agreement and business, i.e., the use was of some benefit or incidental to the partnership arrangement, then the question was for the jury's determination. Appellant contends that because Harris was on his way home from the used car lot at the time of the accident, the evidence was insufficient to support a finding by the jury that he was acting within the scope of the partnership arrangement or that such use of the vehicle was of benefit to the partnership.

In a case involving a partnership, the contract of partnership constitutes all of its members as agents of each other and each partner acts both as a principal and as the agent of the others in regard to acts done within the apparent scope of the business, purpose and agreement of the partnership or for its benefit. It is clear that the partnership is bound by the partner's wrongful act if done within the scope of the partnership's business. Code (1957), Article 73A, Section 13 provides:

> "Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." [1]

---

1. Section 15.
"All partners are liable:
(a) Jointly and severally for everything chargeable to the partnership under §§ 13 and 14."

The test of the liability of the partnership and of its members for the torts of any one partner is whether the wrongful act was done within what may reasonably be found to be the scope of the business of the partnership and for its benefit. The extent of the authority of a partner is determined essentially by the same principles as those which measure the scope of an agent's authority. *Schloss v. Silverman,* 172 Md. 632, 192 Atl. 343. Partnership cases may differ from principal and agent and master and servant relationships because in the nonpartnership cases, the element of control or authorization is important. This is not so in the case of a partnership for a partner is also a principal, and control and authorization are generally within his power to exercise.

In the past, we have held both in workmen's compensation cases and others that where an employer authorizes or furnishes the employee transportation to and from his work as an incident to his employment, or as a benefit to the employer, the employee is considered in the course of his employment when so traveling. This is so whether it be to his place to eat, sleep or to the employee's home. In *Rumple v. Henry H. Meyer Co., Inc.,* 208 Md. 350, 118 A. 2d 468, where an employer furnished an employee free transportation to and from his work as an incident to his employment, we held that an injury sustained by the employee during such transportation arose out of and in the course of his employment. In *Beam Motor Car Co. v. Loewer,* 131 Md. 552, 102 Atl. 908, an employee told his employer that he thought he might be able to sell one of its automobiles, and while on his way home and before showing it to the prospective customer, he became involved in an accident. We held that the question of whether the employee was acting in the scope of his employment was for the jury. See also *Scott v. James Gibbons Co.,* 192 Md. 319, 64 A. 2d 117, where an employee was going to a place to sleep; and *McDowell Etc. v. Magazine Service,* 164 Md. 170, 164 Atl. 148, where an employee was going to get his lunch. Other jurisdictions have held that the question of agency or scope of employment is for the jury where the use of a motor vehicle by an employee or agent to go to and from the place of his employment, to his home or to get his meals, is dictated by the nature of the services to be

performed, part of the contract of employment, or whether such use is beneficial to both principal and agent or master and servant. *Ely v. Rice Bros.,* 167 S. W. 2d 355 (Tenn.); *Randall Insurance, Inc. v. O'Neill,* 128 S. E. 2d 239 (N.C.); *Merwin v. Kellems,* 78 So. 2d 865 (Fla.).

Here, the fact that the defendant partners were in the used car business; that the very vehicle involved in the accident was one of the partnership assets for sale at all times, day or night, at any location; that Harris was on call by Phillips or customers at his home — he went back to the lot two or three times after going home; that he had no set time and worked irregular hours, coupled with the fact that he frequently stopped to conduct partnership business on the way to and from the lot; drove partnership vehicles to the Department of Motor Vehicles, and to dealers in Baltimore to view and buy used cars while on his way to or from his home; that one of the elements of the partnership arrangement was that each partner could have full use of the vehicles; that the use of the automobile by Harris for transportation to and from his home was admittedly "essential" to the partnership arrangement and the most practical and convenient way to operate; and that Harris conducted partnership business both at the used car lot and from his home requires that the question of whether the use of the automobile at the time of the accident was in the partnership interest and for its benefit be submitted to the jury. We find that the lower court did not err in refusing to grant appellant's motions for a directed verdict as to him in the capacity of a co-partner trading as Dan's Used Cars.

## II

The appellant next complains that the lower court committed reversible error in charging the jury that the burden of proof was upon the defendants to show that the vehicle was not at the time being operated on partnership business. The trial court in its charge instructed the jury that the ownership of the automobile by the partnership raised the presumption that it was being operated by Harris on partnership business at the time of the collision and instructed that the jury would have to determine from the evidence whether or not Harris was, in fact,

operating the automobile on partnership business at the time of the accident. Judge Carter went on to say:

> "When I say it is a rebuttable presumption, what do I mean? You have the presumption in the first instance, and then it is rebuttable, and then it becomes the duty of the defendant—that would be Harris and Phillips, operating the partnership — to go forward with the evidence to establish to your satisfaction by a fair preponderance of the evidence that the car was not at that time being operated on partnership business. So again you will have to determine from the facts of the case whether or not at the time of this accident this car was in fact then and there being operated by Mr. Harris on partnership business."

Appellant contends that the above quoted part of the court's charge cast the burden of proof upon the defendants to show that the automobile was not being operated on partnership business. It is the established law in Maryland that the legal presumption arising from the ownership of a motor vehicle places the burden of overcoming the presumption on the owner. We see no difference between a master and servant situation and one involving a partnership. We have held that in a collision caused by an automobile operated by the servant of the owner, there is a reasonable presumption that the servant was acting in the scope of his employment and upon the business of his master, and the burden of overcoming this presumption is upon the master by showing that the servant was employed in business other than his employer's. *Grier v. Rosenberg,* 213 Md. 248, 131 A. 2d 737; *Erdman v. Horkheimer & Co.,* 169 Md. 204, 181 Atl. 221; *Jordan Stabler v. Tankersly,* 146 Md. 454, 126 Atl. 65. Here, where it was shown that a vehicle was owned by the partnership for resale and operated by one of the partners at the time of the accident, there arose the presumption that the car was upon partnership business. It was incumbent at that time for the defendants to show otherwise. We think that the court's instruction concerning the presumption was substantially correct, fairly presented the question to the jury, and find no error in this regard.

## III

At the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence, Phillips, the appellant, moved for a directed verdict in his favor as an individual. These motions were apart from and in addition to the motions with regard to directing a verdict in Phillips' favor as a co-partner. Phillips contends that, in any event, he could not be held liable as an individual because partnership assets must first be used in the payment of partnership liabilities and the individual assets in the payment of individual liabilities, although, concededly, a partner's individual assets may be held liable for the payment of partnership debts where partnership assets are insufficient.

The principle prevails both at common law and under the Uniform Partnership Act when suit is brought on an alleged contractual obligation of the partnership. *Union Bank v. Mechanics' Bank,* 80 Md. 371, 30 Atl. 913; *Glenn v. Gill,* 2 Md. 1; *McCulloh v. Dashiell's Adm'r.,* 1 Harr. & G. 96; Code (1957), Article 73A, § 15 (b). The rule is otherwise, however, both at common law and under the Uniform Partnership Act, where the claim is based upon an alleged tortious act committed in the course of the partnership business. In the early case of *Stockton v. Frey,* 4 Gill 406, 422, we held that the members of a firm are individually liable in actions of tort for the acts of the firm, their agents and servants, and for such acts may be sued individually. In *Schloss v. Silverman, supra,* at page 638, we reaffirmed this principle of the common law even without reference to the Uniform Partnership Act. The Maryland common law rule is in accordance with the great weight of authority. *Weaver v. Marcus,* 165 F. 2d 862 (4th Cir.). See Annotation, *Liability of Partners in Tort as Joint and Several,* 175 A.L.R. 1310.

It has been held that the language of the Uniform Partnership Act, in making all partners jointly and severally liable for tortious acts chargeable to the partnership (Code 1957, Article 73A, §§ 13 and 15), reaffirms the common law doctrine. *Weaver v. Marcus, supra; Soberg v. Sanders,* 220 N. W. 781 (Mich.). See also *David v. David,* 161 Md. 532, 537-538, 157 Atl. 755. In *Weaver* and *Soberg* it was held that under the Uniform Partnership Act, as at common law, a member of the part-

nership individually is liable for injuries sustained by reason of a tortious act of another partner or of a servant or agent of the partnership. We agree with the reasoning of these cases that in tort actions, as contrasted with contractual claims, each member of the partnership may be held personally liable. See *Rowley on Partnership,* § 15 (a) C and D (2d ed. 1960). If the tortious act may reasonably be found to be done within the scope of the business of the partnership, the individual partner against whom judgment is obtained may have a right of contribution from the partnership and from the other partners, but that right does not limit the remedy of the plaintiff to proceed against the members of the partnership as individuals as well as co-partners.

The motions of the appellant for directed verdicts in his favor as an individual were properly denied.

> *Judgment affirmed; costs to be paid by appellant.*

HAMMOND, J., filed the following dissenting opinion, in which SYBERT, J., concurred.

I dissent because I think the evidence conclusively rebutted the presumption that the operator of a motor vehicle owned by another is the agent or servant of the owner, acting within the scope of the owner's business, and left no room for the jury to find the partnership liable. The holding of the majority extends the liability of a partnership for the tortious acts of a partner to new and, to me, unjustified lengths.

There was no contradiction or impeachment of, or reason to doubt, the testimony that Harris had left the used car lot on the evening of the accident for the day and was driving home to eat supper and spend the evening. He planned to remain at home and to drive back to the used car lot the next morning. It is undisputed that both Harris and Phillips were free to treat vehicles owned by the partnership as their own for personal trips and uses. In the months that the partnership had existed, Harris had returned to the used car lot, after he had gone home, only two or three times. He never kept a car at home for sale, always on the partnership lot. The car he drove he had paid

for although it was titled in the name of the partnership. He did not solicit business away from the lot and apparently had not sold a car away from there, but if some one had asked him to sell the car he was driving he would have done so at the right price.

Restatement, Second, *Agency,* Sec. 14A (a) says that the rights and liabilities of partners with respect to each other and to third persons are largely determined by agency principles so that the members of a partnership are liable in tort for the acts of a partner when the act is within the agency power of a partner. This Court has agreed, saying in *Schloss v. Silverman,* 172 Md. 632, 638:

> "The liability of one copartner for the tortious acts of another is analogous to the liability of a principal for the acts of his agent, since each partner acts both as principal and as the agent of the other as to acts done within the apparent scope of the business and purpose of the partnership and for its benefit. 1 *Rowley on Partnership,* secs. 509, 485; 47 *C. J.* 884; 20 *R. C. L., Partnership,* secs. 94, 126. The test of the liability of the partnership and of the several members thereof for the torts of any one partner is whether the wrongful act was done within what may be reasonably found to be the scope of the business of the partnership and for its benefit (*Ibid; Cooley on Torts,* sec. 88), and the scope of the authority of a partner is determined by the same principles as those which measure the scope of an agent's authority."

It is established that a master is not liable for harm caused by the use of an instrumentality entrusted by him to a servant when it is not used in the scope of employment. Restatement, Second, *Agency,* Sec. 238. Comment b of that section says:

> "The mere fact that the master habitually allows the servant to use the instrumentality, or even that the master maintains the instrumentality entirely for the use of the servant, does not of itself subject the master to liability. The master is liable only when the instru-

mentality is being used by the servant for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the servant. Thus, a master who purchases an automobile for the convenience of his servants is not subject to liability when a servant is using it for his own purposes; * * *."

The test is not whether the servant on another occasion or at another time might use the instrumentality in furtherance of the master's business or interests or within the scope of the business of the partnership, it is whether at the time the servant causes harm he then reasonably could be found to be so acting. If the servant's activities at the time of the infliction of the harm were for his own purposes, or in his own behalf, the master is not liable. It matters not that earlier he had acted for his master or that later he would again act for him; at the time of the harm the immediately predominating purpose of the servant must have some significant relation to the business of the master, if the master is to be held liable. See cases cited in the Annotation, "Automobile—Scope of Employment," 51 A. L. R. 2d 120, 128-130, and the Annotation, "Car Salesman Respondeat Superior," 53 A. L. R. 2d 631, 655-661; and also *Sauriolle v. O'Gorman* (N. H.), 163 Atl. 717; *Trucking and Storage, Inc. v. Durkin,* 183 Md. 584, 588-590. Other cases include *McDowell, Pyle & Co., Inc. v. Magazine Service, Inc.,* 164 Md. 170 (where the facts permitted recovery against the master but the court said at page 174:

"It is not contended that, if the appellant's driver was engaged on business of his own, and not on any business of his employer, the appellant would be liable. * * * If the appellant's driver used the truck to go from appellant's store for his lunch, as he had frequently done, with or without express permission of the employer, there would have been no liability, as that would have been merely an accommodation, or a favor granted him (*Myers v. Shipley,* 140 Md. 380, 116 A. 645; *Fletcher v. Meredith,* 148 Md. 580, 129

A. 795), and would have been wholly independent of, and unmixed with, his employment.") ;

*Wagner v. Page,* 179 Md. 465; *A. S. Abell Co. v. Sopher,* 179 Md. 687; *State, Use of Shipley v. Walker,* 230 Md. 133; and *Tregellas v. American Oil Co.,* 231 Md. 95.

The majority finds evidence that the driving of the car home to supper and for the night was within the scope of the partnership business because "for sale" signs were on the partnership cars "at various times and places," the car was always for sale, Harris had on two or three occasions over a number of months gone back to the used car lot at night, and at times in the morning had driven from his home, before going to the lot, to the Department of Motor Vehicles or to an automobile dealer on partnership business. I find no support in the record for a finding that "for sale" signs were ever on the cars except when they were standing on the lot, certainly none that such a sign was on the car Harris was driving on the night of the accident. The fact that Harris would have sold the car for a price if some purchaser had flagged him down while he was en route home or telephoned him at home, does not make his purpose in driving home to supper and an evening of television and sleep less predominantly personal and unmixed with business than that of a lawyer driving home from the office with a briefcase full of files (which he may or may not open). If the lawyer negligently injures someone while driving home, his partners certainly would not be liable because of the briefcase or because a client involved in a street accident might flag him down en route or another client call him at home for advice. The "possibility of sale" theory as a basis for a master's liability for a salesman's negligence (even as a component of a "general entrustment" arrangement) has been rejected by the cases. In *Barrett v. Employers' Liability Assur. Corporation* (5th Cir.), 118 F. 2d 799, Judge Hutcheson for the court was unimpressed by this theory. There an automobile salesman, like others employed by his master, was employed to sell used cars, and had the unrestricted right to use a company car at any time and place on company business and to go to and from his home, on other personal trips and uses, and keep the car at home. While

driving on an admitted pleasure trip, the salesman injured a passenger. The contention of the claimant was that since the salesman was in rightful possession of the car and could sell it at any time, "* * * it must be held that it was being driven on the business of the employer * * *." The district judge took a different view and instructed a verdict for the employer, and the Court of Appeals affirmed, saying it was clear that the use of the car was personal and not for the business of the owner or the combined pleasure of the salesman and business of the owner. See also *Matheny v. United States Fidelity & Guaranty Co.* (La.), 181 So. 647; *Oliphant v. Town of Lake Providence* (La.), 192 So. 95, 103; *Bartek v. Glasers Provisions Co.* (Neb.), 71 N. W. 2d 466; and *Summerville v. Gillespie* (Ore.), 179 P. 2d 719.

Maryland has taken the same viewpoint. See *Phipps v. Milligan*, 174 Md. 438, where the fact that the salesman was driving a purchaser of a car, which had been shipped to his new distant home, to the train was held not to make the drive other than personal and not to bind the employer, the automobile agency, for the negligence of the salesman while driving his employer's car; *Fletcher v. Meredith*, 148 Md. 580, where the fact that the employee was to perform an errand (a delivery) for the employer before he began the trip for which the truck was lent to him, as well as the fact that he had later to return the truck, did not make the tort of the employee on his own trip the tort of the employer; and *Tregellas v. American Oil Co., supra.*

The answer to the theory of the majority, that because Harris occasionally used the car in the morning to visit the Department of Motor Vehicles or an automobile dealer he was on partnership business when he was driving home in the evening after work, is simply that if he had been negligent on such a morning his partner would have been liable with him, but that does not make his partner liable because he was negligent when driving home without any thought of partnership business, any more than it would have if he had been negligent while driving his wife to the doctor after supper, if she had then been taken ill. For illustrative analogous "driving home" cases, see *Senn v. Lackner* (Ohio), 105 N. E. 2d 49; *Crosby v. Braley and*

*Graham* (Ore.), 134 P. 2d 110; and *McCauley v. Steward* (Ariz.), 164 P. 2d 465 (there the car later was to be shown to a prospective customer). See also *Trucking and Storage, Inc. v. Durkin, supra;* and *Tregellas v. American Oil Co., supra* (where the employee was going to work from home).

The defendant's prayer for an instructed verdict should have been granted.

Judge Sybert has asked me to say that he concurs with these views.