The **CHICAGO INSURANCE COMPANY, Plaintiff,**

v.

**PACIFIC INDEMNITY COMPANY and Chubb & Son, Inc., Defendants.**

**Civ. No. H–79–1891.**

United States District Court, D. Maryland.

Dec. 17, 1980.

E. Dale Adkins, III, Baltimore, Md., for plaintiff.

Read K. McCaffrey, Baltimore, Md., for defendants.

ALEXANDER HARVEY, II, District Judge.

In this diversity action, two insurance companies dispute the meaning of a policy coverage provision, and each seeks judgment. The case was tried by the Court sitting without a jury, with the material facts having been stipulated by the parties. This opinion constitutes the Court's findings of fact and conclusions of law.

On November 22, 1977, suit was filed in the Superior Court of Baltimore City against three doctors and the partnership which they had formed.[1] The plaintiffs in that action were Ryan Andrew Ely (an infant), Barbara N. Ely (his mother) and Edward A. Ely (his father). Named as defendants were Dr. Francis L. Grumbine, Dr. Ercoline Gresia, Dr. Vernon M. Gelhaus and Grumbine, Gresia and Gelhaus, a Maryland partnership.[2] The plaintiffs alleged, *inter alia*, that the negligence of Drs. Grumbine and Gresia in delivering Ryan during his birth led to his permanent brain damage and caused harm and expense to his parents. Following various discovery proceedings in that state action, a settlement was reached on July 6, 1979 with the doctors and their partnership. In return for $300,-000, the plaintiffs released the three doctors and their partnership from any and all claims arising out of the incident in question.[3]

The doctors and their partnership were insured under professional liability insurance policies issued both by The Chicago Insurance Company, the plaintiff in this action (hereinafter "Chicago") and by Pacific Indemnity Company, the defendant in this action (hereinafter "Pacific").[4] Pacific's policy provided primary coverage, while Chicago was the excess liability insurer.

The dispute in this case concerns how much of the settlement in the *Ely* case is covered by Pacific's primary policy, or conversely, how much of the $300,000 will have to be paid by Chicago as the excess insurer.

Pacific's policy is divided into "Coverage A: Individual Coverage," and "Coverage B: Partnership Coverage." Under Coverage A, Pacific agreed:

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injuries arising out of:

(a) malpractice, error or mistake of the insured, or of a person for whose acts or omissions the insured is legally responsible except as a member of a partnership, in rendering or failing to render professional services, * * *

Under Coverage B, Pacific agreed:

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury arising out of malpractice, error or mistake in rendering or failing to render professional services in the practice of the professions described in the declarations, committed during the policy period by any person for whose acts or omissions the insured is legally responsible.

The term "insured" is separately defined for each coverage:

(a) Under Coverage A the term "the insured" means each individual named in the declarations as insured; provided if more than one individual is so named as insured, the limits of liability and other terms of the policy shall apply separately to each, in the same manner as though each was the only individual so named.

(b) Under Coverage B, the term "the insured" means the partnership described in the declarations, including each member thereof with respect to the acts or

---

1. *Ely v. St. Agnes Hospital*, Docket 1977, Folio 1298, File No. 13304 (Superior Court of Baltimore City).

2. St. Agnes Hospital was also named as a defendant.

3. Previously, a separate settlement of $150,000 had been agreed upon between plaintiffs and St. Agnes Hospital.

4. Chubb & Son, Inc., the other defendant, is Pacific's representative in Maryland.

omissions of others, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

The policy's limits are $100,000 for "each claim" and $300,000 in the "aggregate." As to these limits, "Condition 1" provides that subject to the definitions of "insured" above:

[T]he limit of liability stated in the declarations as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereby; subject to the foregoing provision respecting each claim, the limit of liability stated in the declarations as "aggregate" is the total limit of the company's liability hereunder for all damages. The limits of liability apply separately to coverages A and B.

Another provision of the Pacific policy is "Exclusion (c)," which provides that the policy does not apply

under Coverage B, to such insurance as is or can be afforded under Coverage A to any member of the partnership described in the declarations.

Chicago had issued the doctors and their partners an excess liability insurance policy. The Chicago policy provided coverage to a limit of $2,000,000 in excess of any primary professional liability coverage on the doctors. Thus, the Chicago excess policy does not cover any loss of the doctors and their partnership unless and until any such loss is not covered by Pacific's primary policy.

In a "Letter of Intent" executed by Chicago, Pacific, and Chubb, an agreement was reached concerning the settlement in the *Ely* case. Pacific agreed to contribute $100,000 for Dr. Grumbine and $50,000 for Dr. Gresia under Coverage A, and $50,000 for the partnership under Coverage B, or a total of $200,000. Under its excess policy, Chicago agreed to contribute the difference, or $100,000, for the partnership and for Dr. Gelhaus as a co-partner under Coverage B. It was further agreed that what was paid under Coverage A would exhaust that coverage and that either party might proceed by way of a declaratory judgment action to

determine the nature and extent of partnership "Coverage B" under the policy.

In this suit, plaintiff Chicago contends that Pacific and Chubb are liable for all $150,000 paid under Coverage B, and plaintiff Chicago is here seeking a judgment in the amount of $100,000. Defendants Pacific and Chubb contend that they are liable for nothing under Coverage B, and they have filed a counterclaim seeking $50,000. In the alternative, they argue that their liability under Coverage B is limited to $100,000, and that therefore they owe Chicago merely $50,000.

The threshold issue in this case is the extent of Coverage B. Defendants read it very narrowly. They assert that Coverage B insures the partnership as an entity against liability for the torts of employees such as nurses, technicians, and clerks, but not for the malpractice of the doctors who make up the partnership. The latter, they assert, is what Coverage A covers. On the other hand, plaintiff argues that Coverage B insures the partnership and each partner against liability for the torts of other partners as well as for the torts of employees.

█ There can be no dispute concerning the legal principles involved. The parties agree that in this diversity action, Maryland law is controlling. An insurance policy is a contract and is to be read as any other contract. *Little v. First Federated Life Ins. Co.*, 267 Md. 1, 296 A.2d 372 (1972). Its words are to be given their ordinary meaning. *C & H Plumbing and Heating, Inc. v. Employers Mut. Cas. Co.*, 264 Md. 510, 287 A.2d 238 (1972). An insurance policy must be read and construed as a whole so as to carry out the intentions of the parties. *Aragona v. St. Paul Fire and Marine Ins. Co.*, 281 Md. 371, 378 A.2d 1346 (1977); *Simkins Industries, Inc. v. Lexington Ins. Co.*, 42 Md.App. 396, 401 A.2d 181 (1979). A policy is not to be construed against the insurer in the absence of ambiguity. *National Grange Mut. Ins. Co. v. Pinkney*, 284 Md. 694, 399 A.2d 877 (1979). Reading the Pacific policy with the above principles in mind, this Court concludes that

the interpretation urged by the plaintiff Chicago is the correct one.

■ Coverage B insures against liability for the acts of "any person" for whose acts the insured is "legally responsible." The insured under Coverage B is the partnership, and it is clear that in Maryland a partnership (and each partner) is legally responsible for the tortious acts of a partner committed in the course of partnership business. *Ann.Code of Md.*, Corporations & Associations Article, §§ 9–305, 9–307 (1975); *Phillips v. Cook*, 239 Md. 215, 210 A.2d 743 (1965). Liability, then, of the partnership (and consequently of each partner) for the acts of any other partner is clearly covered under Coverage B. The words "any person" clearly include any partner. Liability of an individual partner for his own acts is excluded under Coverage B by virtue of the applicable definition of "insured." The "insured" is the partnership "including each member thereof with respect to the acts or omissions of others." Individual liability of a partner is covered under Coverage A.

Plaintiff's reading of Coverage B is further supported by the fact that while Coverage A includes vicarious liability for acts of employees, it specifically excludes vicarious partnership liability. Under Coverage A, a partner who did not commit the negligent act would not be insured against liability for a co–partner's act. If, as defendants contend, this coverage is likewise not included in Coverage B, then what is labeled as a partnership policy does not insure against what is of the essence of a partnership, namely, liability of one partner for the acts of a co–partner.

The various arguments advanced by defendants do not persuade the Court that it should ignore the clear meaning of the policy provisions. Defendants' fear that they may be paying twice for the same tort if Coverage B includes vicarious partnership liability is unfounded. Moreover, plaintiff's reading of Coverage B is not inconsistent with Exclusion (c), which excludes from Coverage B any insurance available under Coverage A. As stated above, coverage of an innocent partner for vicarious partnership liability is not available under Coverage A. The language of limitation contained within the definition of "insured" under Coverage B does not suggest that vicarious partnership liability is not covered under Coverage B. It is merely provided that within Coverage B no matter how many innocent partners are vicariously liable, only $100,000/$300,000 insurance is available.

In support of their position, defendants point out that the Coverage A annual premium is $3174 while the Coverage B premium is $159. But the gross discrepancy in premiums between the two Coverages is due not to the fact that Coverage B covers only the torts of incidental employees and not partner–doctors, as defendants suggest, but rather to the fact that Coverage B, the partnership coverage, is secondary to Coverage A, the individual coverage. In the usual case, it would be expected that a plaintiff's malpractice claim would be brought only against the doctor who committed the tort and would be satisfied out of sums available under Coverage A. Only under unusual circumstances where the tortfeasor doctor could not be sued, or where the judgment would exceed the limits of Coverage A would the tort plaintiff be expected to rely on the vicarious partnership liability of the innocent partners, who are insured at a lesser premium under Coverage B. The facts here make this one of those unusual cases. The total liability of all three doctors for the acts of Drs. Grumbine and Gresia was $300,000. Under the Letter of Intent, executed by the parties, only $150,000 of this was available under Coverage A. The $150,000 of the liability of all three partners having not been satisfied by the two tortfeasors, plaintiffs in the *Ely* case would be entitled to recover the balance from the other partner or the partnership. It is this sort of vicarious liability which Coverage B was intended to cover.

Having determined that Coverage B is available, the next question to be answered concerns the limits of that Coverage. Coverage B, like Coverage A, is limited to $100,000 per claim and $300,000 in the

aggregate. The Court must therefore determine the number of claims asserted against the insured. If there was only one, defendants would owe plaintiff $50,000 rather than $100,000.

Plaintiff contends that three claims were asserted here, by the infant, by his mother and by his father. The pleadings support this position. In response, defendants argue that all three claims arose from the same occurrence. Several cases have discussed the distinction between a claim and an occurrence. *See Champion Int'l Corp. v. Continental Cas. Corp.*, 546 F.2d 502 (2d Cir. 1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977); *Burlington County Abstract Co. v. QMA Assoc., Inc.*, 167 N.J. Super. 398, 400 A.2d 1211 (1979); *Lamberton v. Traveler's Indem. Co.*, 346 A.2d 167 (Del.1975). However, the distinction made in those cases is not dispositive here. In *Lamberton*, several of the separate judgments which were treated as separate claims were in fact the result of claims in which a husband, injured directly, and a wife, injured consequentially, joined. The court in that case was not asked to address the issue whether the separate interests of a husband and a wife, joined in one judgment, were in fact separate claims.

The only case which this Court has found and which addresses the issue here is *Rodriguez v. Maryland Cas. Co.*, 369 F.Supp. 1144 (D.P.R.1971). In that case, the court held that eleven separate claims resulted when a hospital's negligence led to the death of a woman who left a husband and ten children. This Court would agree with the conclusion of *Rodriguez.* From a reading of the Declaration filed in the Superior Court of Baltimore City, it is clear that there were three separate claims made against the doctors, even though most of the losses of the plaintiffs were the result of injuries to the infant. One claim is that of the infant for irreversible brain damage; a second is that of the father for sums

required to be spent to care for his injured child; and the third is that of the mother for her personal injuries.[5] Accordingly, this Court concludes that $300,000 is available under Coverage B.

For the reasons stated, this Court finds for the plaintiff. Under the Letter of Intent and the Pacific policy, all of the $300,000 settlement should be paid by the defendants, and the excess policy issued by plaintiff is not chargeable with any part of the loss. Judgment is therefore entered in favor of the plaintiff in the amount of $100,000, plus costs.[6]

---

**5.** Count IV of the Declaration expressly alleges that Barbara Ely, the mother, herself suffered physical and mental injuries as a result of the negligence of the doctors occurring during the birth of her son.

**6.** Plaintiff is not entitled to attorney's fees in this case.